### THE RUBY CHIEF MINING & MILLING CO. v. GURLEY,

1. WAIVER OF DEFECTS IN PROCESS AND SERVICE.—A general appearance and the filing of an answer after denial of a motion to quash the return upon the summons constitute a waiver of all irregularities or defects in the issue, service, or return of the process.

2. CORPORATION—INVALID CLAIMS.—H., T. and S. own and operate certain mining properties; after incurring debts for some of which H. and T. give their personal promissory notes, they organize a corporation; the mines are then deeded to the corporation, neither of the notes mentioned having become a lien thereon, H. and T. becoming the officers and almost exclusive stockholders of the company.

*Held*, that moneys paid by H. in taking up the notes constitute no legal claim against the corporation, and a recovery must be disallowed.

*Appeal from District Court of Arapahoe County.*

Messrs. ROGERS & CUTHBERT, for appellant.

Mr. M. B. CARPENTER, for appellee.

MR. JUSTICE HELM delivered the opinion of the court.

The first question presented by counsel for appellant requires but little attention. It is based upon alleged irregularities in the service of process. When the motion to quash the return upon the summons was denied, a general appearance was made on behalf of appellant and an answer was filed traversing the averments of the complaint. The defects, if any, in the service were thus waived. By appellant's action the court obtained jurisdiction in the premises as fully as if there had been no irregularity in the issue, service or return of the summons. The principle of waiver under such circumstances has been frequently recognized by this court. *U. P. Ry. Co. v. De Busk*, 12 Colo. 294.

Prior to September, 1885, three men (Hawkes, Taylor and Smith) owned and operated certain mining properties in Gunnison county. At the date referred to these parties organized the appellant company. They deeded the properties mentioned to the company and received stock from the company in payment therefor. But a very few shares of stock were owned by other persons, and Hawkes, Taylor and Smith became the officers and managers of the company. A corporation was thus substituted in place of the original mining partnership of joint ownership. Work upon the mines was then resumed and carried on in the name of the corporation.

In February, 1887, the present suit was brought by appellee, as assignee of Hawkes, one of the three parties above

mentioned, to recover for moneys advanced, articles furnished, and services rendered to the company by Hawkes. As it is conceded that the judgment for $4,078 includes but two items, viz., a draft for $4,000 and $78 expended for certain specified articles, the rest of the acount will receive no further attention. It appears without controversy that in January, 1886, over three months after the organization of the company, Hawkes advanced by the draft in question the sum of $4,000 which was used in the payment of outstanding obligations. Nor is there any dispute concerning the actual expenditure of the remaining $78.

But it is strenuously contended on behalf of appellant that these moneys were paid in pursuance of an agreement made when the company was organized. Under this agreement, so it is said, each of the three principal stockholders was to advance money in proportion to the quantity of stock received by him, for the payment of all debts theretofore incurred in working the properties and outstanding at the date of incorporation, as well as for the discharge of corporate debts thereafter accruing. Being practically the exclusive owners of all stock issued, they preferred to liquidate the debts in this way, so that no liability should attach to the company. Thus it was believed the credit of the company would be kept good and the value of the stock would be enhanced. If the properties turned out well in the end, they would receive compensation through dividends or sales; if, on the contrary, the enterprise proved a failure, the money advanced was simply lost. It is further claimed in the interest of appellant that besides the $4,000 contributed by Hawkes, who held over half the stock, Taylor also paid in pursuance of this agreement over $3,000 for himself and Smith; and that no demand for reimbursement had been or would be made upon the company.

The testimony of Taylor tending to establish the foregoing agreement is corroborated directly or indirectly by that of two other witnesses, viz., Mainard and Smith. Certain conduct of Hawkes is also consistent with the existence of such

an agreement; he frankly admits that when, as he claims, he loaned the company the $4,000 he neither asked for nor received any security, and that he did not even request a promissory note or any other instrument evidencing the transaction. Besides, while declaring that he mentioned the fact to the directors personally, Hawkes further admits that it was not called up for consideration at any meeting of the board nor in any way officially acted upon, though at least one meeting was afterwards held. But, on the other hand, Hawkes testifies squarely and positively, that no such agreement was entered into and that the money was advanced to the company as a loan. There are a few circumstances tending to corroborate Hawkes, and the jury must have resolved the conflicts of testimony in this regard in his favor.

If our decision rested solely upon the existence or non-existence of the agreement in question, we might decline to disturb the verdict upon the weight or preponderance of evidence. But it appears without dispute that prior to the organization of the company, the parties had incurred in connection with the properties certain obligations that remained outstanding. Hawkes himself estimates the amount of these obligations at $4,500; Taylor fixes the amount at about the same figure. Among these old debts were two promissory notes executed by Taylor and Hawkes individually to the bank at Crested Butte, whereby money had been raised and used in the settlement of incidental claims. Payments upon these notes aggregating $2,728.06 were made by the bank out of the proceeds of. Hawkes' $4,000 draft. These notes were, as suggested, the individual obligations of Taylor and Hawkes. Moreover, as also suggested, they represented debts that were not contracted by the corporation. Neither the notes nor the older debts they superseded ever, so far as we are advised by the record, became liens upon the property sold to the company. There is no evidence before us showing that the company assumed these notes or became liable for their payment. Hawkes testifies

that he purchased the $4,000 draft, and that while Taylor wrote the letter in which it was enclosed, he (Hawkes) carried it to the post-office and mailed it.     More than a year elapsed after the draft was received by the bank before this suit was commenced; yet there is nothing to show that Hawkes during that period or down to the present time ever complained of the manner in which the funds were applied; nor does he make any pretense of ignorance concerning this application.     It is difficult to discover under the circumstances disclosed, upon what principle the company can be charged with the $2,700 thus applied to the payment of the individual notes of Hawkes and Taylor.

As to more than half the amount recovered by appellee, it is therefore not a question of conflicting testimony.     And even if it were conceded that the remainder of the draft might under the evidence be regarded as having been used in discharging debts of the company, it is obvious that the judgment must be reversed.

Upon a retrial of the cause the evidence relating to the balance of the draft as well as that pertaining to the $78 may be different, or possibly additional facts may be brought out concerning the two notes paid by the draft, and we do not feel warranted in discussing the remaining propositions advanced by appellant or in directing a judgment.     It will be time enough to consider the powers of the president and stockholders of corporations, and also the subject of corporate ratification when such consideration becomes a necessity.

The judgment of the district court is reversed and the cause remanded.

*Reversed.*