Bissell, J.,
delivered the opinion of the court.
This proceeding in forcible entry and detainer was begun by Bostwick and Best to recover possession of a section of land in Arapahoe county. The petition was filed with Morse, as justice, about the 20th of January, 1894. The justice issued a summons and delivered it to one Duffield, who returned it served, signing his service as special constable. No appointment was indorsed on the summons, nor was Duffield otherwise commissioned as an officer. On the 27th, Cunningham appeared and moved to quash the summons and abate the suit because it was not served on him three days before the return day, and because it was not served *170 by one duly or at all authorized to serve such process. The motion was denied and the case continued for service. Another summons was issued to one Tait; the writ bearing the indorsement “ that there was no qualified constable who could conveniently be found in the township.” This summons was served on Cunningham, who appeared and filed a motion to quash because the indorsement was not true. Cunningham substantiated his statement by an affidavit, which undoubtedly showed there were plenty of constables within convenient distance of the office of the justice who could readily have been found to serve the writ. The motion was denied, whereupon proceedings were begun in the district court to prohibit the justice from proceeding further with the case. When this matter was disposed of adversely to Cunningham, he moved to change the venue, and the case was sent to Bickens, justice, for trial. When it came up before him, the defendant filed an answer denying generally the allegations of the petition, and set up an agreement 'of a lease for five years and a transfer of the possessory interest of the petitioners. The case was tried and went against Cunningham, who took an appeal to the,county court, where the cause was again tried and resulted in a judgment in favor of the petitioners, from which the defendant appealed to this court.
The appellant practically presents but two propositions for our consideration. Since each of these must be resolved against him, the result will be the affirmance of the judgment. The principal point respects the attempted delegation of authority to a special constable to serve the process. We accept counsel’s contention respecting the authority of justices in this state, and, generally speaking, the limitations which he would put on their power to appoint special officers. The practice of appointing such special officers is, as all lawyers and judges know, a crying and a growing evil. It comes partly from the loose phraseology of the statute, and partly from the desire of litigants to have particular persons appointed to serve writs and to execute process. With the *171 policy which led to the adoption of the act which gave a justice the power to appoint a suitable person to act as constable in a case where there was a probability that a party charged with a crime might escape, or a likelihood that goods would be removed before a regular officer could be found to serve the process, we have nothing to do. In and of itself, the statute doubtless frequently subserves a useful purpose; and if the authority which it confers was always wisely and discreetly executed, very little harm would come from it. Unfortunately, there is added to this general grant of authority, by a disjunctive conjunction, a clause which seemingly enlarges the authority conferred and permits its exercise apparently under other circumstances, and when neither of the contingencies suggested by the earlier clauses may exist. The clause is, “ whenever no qualified constable can conveniently be found in the township.” It is quite impossible to determine whether the legislature had other conditions in mind than those expressed in the other clauses, nor whether the lawmaking power intended to grant generally to justices the right to appoint special constables. Whatever may have been their purpose, it is, of course, impossible to attach the limitation to the last clause that a special constable can only be appointed when a criminal is about to escape, or when personal property is liable to be removed before a regular officer can be found to execute the process. There was an evident intention on the part of the legislature to confer the power in still other classes of cases than those first mentioned. The language, however, is not broad enough to give the justice the right to appoint a special constable under any and all circumstances, as he may see fit or proper. The latter clause cannot be taken as a grant of general authority to appoint constables to act in all cases. But for its existence w-e should undoubtedly agree with the authorities in other states, where the justice is held to have no power to appoint a special constable to serve a summons, because it is not within the possibilities that a regular constable cannot be found to serve the writ within any necessary or indispensable *172 time. But the words of limitation, to wit, “conveniently found,” must be construed to have a restricting significance. In other words, the justice may not of his own motion appoint a special officer, nor may he do it on request of a litigant, unless there exists a legal necessity for the appointment ; in other words, it must be made to appear to the justice, before he is authorized to appoint a special constable, that some legal right is liable to be jeopardized or some substantial detriment or harm come to a litigant. If the phrase may be so applied, the convenience must be a legal one. This is manifest from the general policy of the law. There are statutes which provide for the election of constables, specify their duties, define their powers, and provide for the execution of bonds which shall secure the faithful discharge of the duties which the law imposes on the officer. This policy has a strong and marked significance in this connection. The defendant has a right to insist that the person deputed to serve the writ shall be a legally elected officer, who shall discharge his duties under his oath of office, and under the restrictions of a liability on his bond if he oppressively or wrongfully exercises his powers. A special constable is a totally irresponsible person. If he oppressively execute the power given him, the defendant is remediless and he can get no redress for the abuse. These considerations show that the justice must see that some injury will come to the litigant if he waits for a regularly appointed officer. We agree with counsel in his propositions respecting the original inception of this case. The process ought to have been quashed and held insufficient and the service bad.
There were several regularly elected or appointed constables within easy reach of the court, and the justice had no right to make the appointment of a special officer, either from motives of economy, the request of the litigant, or for any other reason than to prevent possible harm to the plaintiffs. The question, however, is not saved, and though we assent to the position, it is not available to reverse the case. The appellant did not stand on his motion and let the pro *173 ceedings go on, but he took a great many steps which, under the various authorities in this state, bar him from now insisting on the illegality of the service as a defense to the judgment. The statute which regulates these proceedings contains a broad, sweeping clause, which adds much force to the authorities which will be hereafter cited, and the position taken with reference to the force and effect to be given to the defendant’s acts. The act of 1885, respecting forcible entry and detainer, by section 19, page 230, enacts generally that in all appeal cases which have originated before a justice, the appellate court shall try the case de novo, and that no exception shall be allowed because of the proceedings taken before the justice, where he has jurisdiction of the subject-matter. That this justice, according to the present record, had jurisdiction of the subject-matter, goes without saying. The land was situate in Arapahoe county, and both Morse and Pickens were justices in that county, and the petitioner had the right to initiate the proc edings before either one of them. What the defendant did also bars him from raising the question. He did not rest on his motion to quash, but first filed a motion to change the venue and took the case before another justice, which in many instances has been held to be a general appearance, which will waive a defect in the service. Further, when the case got before Pickens, he filed an answer setting up the defenses which have been stated. On this issue the cause was tried and judgment followed. Not content with this proceeding, he took an appeal to the county court, came in generally, and tried the case on its'merits in a court which had jurisdiction of the subject-matter, and which acquired jurisdiction of the person of the defendant by virtue of this general and voluntary appearance. These circumstances all conspire to deprive him of the right to raise the question on which he now insists. Colo. Central Ry. Co. v. Caldwell, 11 Colo. 545 ; Ruby Chief Mining Co. v. Gurley, 17 Colo. 199; Burkhardt et al. v. Haycox, 19 Colo. 339; Campbell Mfg. Co. v. Marsh et al., 20 Colo. 22.
*174 There is nothing in the case of Cort v. Newman, 6 Colo. App. 154, decided in this court at the April term, which at all conflicts with this general doctrine. In that case it was stipulated by counsel that the person who took the goods in execution of the process had not been duly or otherwise appointed as special constable with authority to serve. It was according^ held that the acts of the alleged special officer were trespasses, for which the plaintiff might recover. It did not transpire that the defendant had appeared generally in the action, whereby the justice acquired jurisdiction of his person as well as jurisdiction of the subject-matter, and there was no question of any waiver on the part of the defendant of the irregularities in the execution of the process. Whatever may have been the facts respecting the ultimate levy of the execution on the goods, there was nothing in the case which tended to show that the defendant had in any. way so waived his right as to deprive him of his cause of action against the trespasser who took the goods. The case lacks all of the features and facts which both permit and compel us to apply the rule which has been settled by so many cases in. the supreme court. We have thus disposed of appellant’s principal question.
There is another matter on which an argument is based, which is without sufficient foundation. The petition alleged a lease made on or about the 20th of December for the term of one year then next ensuing. The proof showed a leasing near the last of December, and for one year from the 1st of January, according to the several judgments which were entered against the appellant. Of course he insists if the lease was to commence on the 1st of January, and not on the 20th of December, there was a variance between the proof and the plea. There are two answers to the position. The findings are all against him and with the appellees. It is doubtful whether there was any variance between the pleading and the proof, but if it is conceded the allegata and probata do not agree, whether such a variance will ever be fatal when there has been a hearing on the merits and prejudice cannot *175 be demonstrated, is open to question. If we should admit the general proposition, the appellant is in no condition to urge error. He made no motion for judgment because of the variance, nor did he object to the introduction of any testimony because it did not correspond with the pleading. Not having saved the question in any wise, he cannot be heard in this court to complain of the judgment.
There are some other minor questions suggested in the brief of counsel, but they are not of the sort which, if found in his favor, would require us to reverse the judgment. The tendency of the appellate courts of this state is not to restrict, but rather to extend, the application of the statute which forbids us to reverse a judgment for any errors which do not affect the substantial lights of the parties. We recognize the force of the enactment, and unless we can see that the error which has been committed has worked manifest injustice, we do not regard it as sufficient to overturn the judgment. For this reason we do not generally regard assignments of error based on such matters of enough importance to require extended analysis or discussion.
Perceiving no error in the record, and accepting the conclusions of the trial court on the matters of fact as correct, we conclude that justice has been done between the parties, which permits us to affirm the judgment.

Affirmed.