8692

## TREXLER LUMBER CO. v. WILSON.

1. CONTRACTS—WAIVER.—A party waives his right to insist that the other could not rescind the contract for purchase of lumber by agreeing to take it back and directing its return to him, and when no objection is made to return charges, such direction makes him liable for freight and unloading charges.

2. IBID.—LUMBER—DAMAGES.—Where a purchaser retains a lot of lumber which does not come up to the specifications, the measure

of his damages is the difference between the contract price and the market price of the lumber retained.

3. IBID.—IBID.—IBID.—The purchaser could retain the lumber until the difference between him and the seller had been adjudicated, and apply the lumber to the satisfaction of his damages.

Before RICE, J., Lee, Spring term, 1912.   Affirmed.

Action by Trexler Lumber Co. against Edwin Wilson. Defendant appeals.

*Mr. T. H. Tatum,* for appellants, cites: *An agreement to take back gives the other party the right to rescind:* 2 Brev. 304; 2 N. & M. 64; 1 McC. 537; Chev. 190; 2 Rich. '40; 2 Strob. 249; 37 S. C. 17; 74 S. C. 202. *Charge on facts:* 47 S. C. 523. *Tender must be unqualified:* 80 Fed. R. 16; 1 N. & M. 196; 2 Bail. 274; 39 S. C. 4; 88 S. C. 538; 56 Fed. 630; 38 Am. R. 361; 76 Mass. 215; 37 Kan. 249.

*Messrs. Lee & Moise,* contra, cite: *Unconditional tender not necessary:* 69 N. Y. App. Div. 134; 16 N. W. 546; 35 Cyc. 149; 88 Pac. 648; 84 Am. D. 728; 42 Ga. 283; 66 S. E. 582; 2 So. 302; 35 So. 44; 37 S. C. 17.

*Messrs. McLeod & Davis,* also contra, cite: *Stating issues is not a charge on the facts:* 62 S. C. 546; 65 S. C. 169. *Special view of law should be requested:* 63 S. C. 494. *Plaintiff forfeited no rights by retaining the lumber:* 11 Rich. 46.

December 3, 1913.

PER CURIAM: The allegations of the complaint stated in a short way are: In February, 1911, the plaintiffs contracted to buy from the defendant one hundred and ten pieces of long-leaf pine lumber of certain dimensions, "A. C. L. specifications," to be shipped on the order of the

plaintiffs; the defendant agreed to plaintiffs' request to ship the lumber to A. C. L. at Kingstree, S. C. The defendant shipped two carloads of lumber as directed, on the faith of defendant's representation that the lumber shipped was of the quality agreed on, the plaintiffs paid on account of the purchase money $266.00; the lumber was below the grade and specifications contracted for, and for that reason rejected by the railroad company and the plaintiffs; plaintiffs immediately notified defendant of the rejection and its cause, and received instructions from him to return the lumber to him at St. Charles; the plaintiffs did reship the lumber as directed, but the defendant refused to receive it, and the lumber is now at St. Charles subject to defendant's order. The defendant is indebted to the plaintiffs in the sum of $266.00 advanced to him on the timber, $75.26 freight from Kingstree to St. Charles and $5.00 for unloading lumber at St. Charles.

The defenses were substantially these: The plaintiffs agreed to waive the written specifications, and accept lumber of the kind shipped; when the lumber was rejected the defendant agreed to take it back and return the money advanced, on condition that it should be delivered to him at St. Charles free of cost and in as good condition as when he shipped it. The plaintiffs did not comply with the conditions, on the contrary, shipped the lumber to their own order and offered to deliver to defendant the bill of lading on condition that he paid back the $266.00 advanced, the freight charges both ways and $5.00 for unloading the cars; the lumber was defaced and injured by cross marks of yellow paint, the rejection mark of the railroad company. The defendant further set up a counterclaim for $73.58, the remainder of the purchase money agreed on.

On the trial of the issues thus made, the jury found a verdict in favor of the plaintiffs for the full amount claimed.

Defendant's exceptions relate mainly to the subject of tender and the right to rescind for failure of consideration, under the original contract of sale, but we think all questions of that sort were entirely eliminated by the written agreement of the parties themselves fixing their rights and obligations after the rejection of the lumber.

On April the 10th, 1911, the plaintiffs telegraphed defendant, informing him of the rejection of the lumber, and asked for instructions as to its disposition, and, by telegram of the same date, directed the railroad company to reship lumber to their order at St. Charles. On 12th of April, plaintiffs, by telegram and letter, notified defendant that they were returning the lumber at his expense as it did not come up to specifications. The defendant telegraphed to plaintiffs, 12th of April: "I look for you to pay for lumber or return," and on same day plaintiffs sent defendant this dispatch: "You will have to pay full freight one way and a half rate returning on two cars rejected, will you do this?" The plaintiffs also wrote to defendant a letter of like tenor on the same day. On April 13th, defendant wrote plaintiffs the following letter: "Your wire informing me that the two cars 7x14 were being reshipped to me has been received. I want them at once as I can place them. Have consigned to me and mark them prompt shipment required."

On April 15th, 1911, plaintiffs drew, through a Sumter bank, on the defendant for $271.66, being the amount advanced to the defendant on the lumber and charges of $5.00 for unloading, and directed the railroad agent at St. Charles to deliver the lumber to the defendant on payment of the draft and freight charges due the railroad company. The defendant was notified by letter of April 15th, and requested to pay the freight charges and the draft with the bill of lading attached. .

On the 17th of April, defendant, by letter, declined to accept the lumber, giving as his sole reason "that it has been defaced and marked across head of each piece with red paint, which brands and rejects it as unsalable."

The plaintiffs, in reply, called defendant's attention to the fact that the marks could be scraped off or cut off, without injury to the lumber at a trifling expense, which the plaintiffs offered to pay.

From this correspondence it appears beyond all doubt, that the defendant waived any right he had to contend that the plaintiffs could not rescind the contract and return the lumber, by agreeing to accept it and directing that it be returned. This direction carried with it the obligation for expenses of returning, consisting of freight and unloading charges, especially as the defendant made no objection to these charges when they were called to his attention. The correspondence shows that the plaintiffs carried out in substance the agreement as to the return of the lumber, and were entitled to receive from the defendant the money they had paid out to the defendant, and the necessary expense of freight and unloading. The only objection offered by defendant was altogether insignificant and could not prevent a recovery by the plaintiffs since they offered to pay the expenses of having the marks taken off the lumber.

On the whole testimony no other verdict, except that which was rendered in favor of the plaintiffs, could have been sustained; and from this conclusion it follows there was no error in the refusal to grant a nonsuit, and that the alleged errors in the charge were immaterial.

In view of this conclusion, it was favorable to the defendant that the Circuit Judge submitted to the jury as questions at issue whether the lumber was of the kind and quality required by the original contract, or any modification of it, and whether the defendant had agreed to a return of the lumber at his expense; and that he instructed the jury, that if the lumber was up to the specifications, the plaintiffs

could not ship it back and charge the defendant with the freight unless authorized by him.

It is true the Circuit Judge held in the following statement of the law, "Now, if the lumber which was shipped by Mr. Wilson, the defendant, if you find as a matter of fact that he did not furnish the lumber which was specified in the contract, and furnished a different kind which the contract never contemplated, which the plaintiffs never agreed to take, then Mr. Foreman and gentlemen, I charge you that these defendants had the right to retain possession of that lumber, come into Court, and get their judgment and subject that lumber to the payment of this two hundred sixty-odd dollars, if you find that he owes it."

If the plaintiffs had elected to retain the lumber although it was not up to the contract, the measure of their recovery would not have been the amount advanced as stated by the Circuit Judge, but the difference between the contract price of lumber, and the market value of that which was shipped. But the error was immaterial, since the plaintiffs did not elect to retain the lumber; on the contrary, tendered it back in accordance with the instructions of the defendant when the defendant refused to accept the offer made in accordance with his instructions, and to return the money advanced and expenses incurred by his direction; the plaintiffs had a right of recovery for the money advanced and the expenses authorized by the defendant.

The defendant can not complain that the plaintiffs recovered judgment against him while still retaining the lumber in their possession, for it was proper for the plaintiffs, on the refusal of their offer, to keep the property until the dispute could be adjudicated. *Carter* v. *Walker,* 2 Rich. 40; *Kauffman* v. *Stuckey,* 37 S. C. ",  16 S. E. 192.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.