UNGERER AND COMPANY, Respondent, v. LOUIS MAULL CHEESE AND FISH COMPANY, Appellant.

**St. Louis Court of Appeals, January 24, 1911.**

1. **SALES: Contracts: Performance.** A contract for the sale of "gum tragacanth powdered," which is a distinct description of a particular article, according to a known mercantile classification, is not a contract as to specific goods, but as to *any* goods of a particular kind, the designation used being a condition going to the essence of the contract; and delivery of a substitute would be a breach of the contract.

2. ———: **Sale by Sample: Obligation of Seller.** A sale by sample does not relieve the seller from the obligation assumed by him in selling by description, and if the sample is an imitation, not discoverable by mere inspection, it does not follow that the bulk of the goods delivered may also be an imitation of what is called for by the contract.

3. ———: ———: **Rescission: Breach of Contract as to Installments Delivered.** A buyer of goods of a certain quality, to be delivered in installments, will be allowed to revoke the order for future shipments on the ground that the goods already delivered did not meet the requirements of the contract of sale where, at the time he accepted the goods delivered, he did not know they failed to meet such requirements.

4. **RESCISSION: Contracts: Restoring Status Quo.** A rescission of a contract involves restoring the status quo of the parties.

5. **SALES: Refusal to Accept Goods: Assigning One Ground for Refusal: Buyer not Estopped to Assert Other Grounds.** A buyer, having more than one reason for rejecting goods, does not, by assigning one reason, conclusively admit that there is no other, and he may justify his refusal to accept the goods on another ground.

6. ————: **Contracts: Breach: Evidence.** Where a buyer of goods for delivery in installments sought to justify a refusal to accept goods tendered because the goods previously delivered did not comply with the terms of the contract, the testimony of an expert that the goods previously received were a substitute for the goods contracted for, but of such close resemblance that a casual examination would not detect the defect, was admissible as tending to prove a breach of contract on plaintiff's part, defeating his right to recover.

————: ————: ————: ————. Where, in an action for a buyer's refusal to accept goods under a contract calling for delivery in installments, the buyer sought to recover damages under a counterclaim for the seller's act in delivering a substitute, the testimony of an expert that the goods delivered were a substitute for the goods called for, of such close resemblance that a casual inspection would not detect the defect, was admissible, under the counterclaim, though the buyer had sold the goods received at a profit.

8. ————: ————: ————: ————. Where, in an action against a buyer for damages for refusal to accept part of the goods sold, the seller sought to recover the difference between the contract price and the amount obtained at a public sale of the goods, the testimony of an expert that goods delivered by the seller and received by the buyer under the contract were a substitute for the goods called for was admissible to determine whether the resale was a proper criterion of the market value of the goods not accepted, as, in order for such a sale to have the desired effect, it was necessary that it be a sale of the thing described in the contract, and not a substitute; the seller claiming that the goods delivered by him and the goods sold because of the buyer's refusal to accept were of the same quality.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams,* Judge.

Reversed and remanded.

*Clarence T. Case* for appellant.

(1) In a mercantile contract a statement of the subject-matter is ordinarily to be regarded as a warranty, or condition precedent, upon the failure or nonperformance of which the party aggrieved may repudiate the whole contract. Norrington v. Wright, 115 U.. S. 188; Bowes v. Shand, 1 Q. B. D. 470, 2 Q. B. D. 112, 2 App. Cas. 455; Morrison, McIntosh & Co. v. Leiser, 73 Mo. App. 95; Henry Gaus & Sons v. McGee, 42 Mo. App. 307. (2) A vendee may reject an installment of the goods whose quality is not in accordance with the terms of sale, though he has accepted a prior installment of like inferior quality. Sigerson v. Harkes, 11 Mo. 105; Am. Pail Co. v. Oakes, 64 Mo. App. 235; Dairy Co. v. Dairy Co., 96 Mo. App. 495; Hollifield v. Black, 20 Mo. App. 328; Morrison, McIntosh & Co. v. Leiser, supra; Norrington v. Wright, supra. (3) To constitute a waiver of defects in an article sold under a warranty there must be both knowledge of the defect and acquiescence. Johnson County v. Lowe, 72 Mo. 637; Fairbanks v. De Lissa, 36 Mo. App. 711; Fairbanks v. Baskett, 98 Mo. App. 53. (4) Where on breach of a contract of sale the seller elects to sell the property at public sale for the purpose of establishing its market value, the sale, in order to be effective for that purpose, must be within a reasonable period after the buyer has broken his contract and the seller must exercise good faith and reasonable diligence to sell the goods for the best price obtainable. Alden Spears Sons Co. v. Hubinger, 129 Fed. 508; Logan v. Carroll, 72 Mo. App. 613; Brooke v. Robson, 3 Ga. App. 136; Carver v. Graves, 47 Tex. App. 481; Wagnes v. Sioux City N. & S. Co., 14 Colo. App. 219; Camp v. Hamlin, 55 Ga. 259. (5) When an article is sold on an express or implied warranty the purchaser may, after discovering the defect, retain the article and defeat a recovery against

him to the extent of the difference between the value as represented and its real value.    Edwards v. Noel, 88 Mo. App. 434; Mfg. Co. v. Hunter, 87 Mo. App. 50; Tall v. Chapman, 66 Mo. App. 581.

*Luther Ely Smith* for respondent.

(1)    Parties are bound by the construction which they place upon the terms of a contract by their conduct. 2 Mechem on Sales, sec. 1324; Voss v. McGuire, 18 Mo. App. 477; Graff v. Foster, 67 Mo. 512; 15 Am. and Eng. Ency. (2 Ed.), pp. 1225-6; Seixas v. Woods, 2 Caines. 48, 2 Am. Dec. 215; Drug Co. v. Puckett, 139 Ala. 331; Swett v. Colgate, 20 Johns 196; Carson v. Baillie, 19 Pa. St. 375; Welsh v. Carter, 1 Wend 185; Studer v. Bleistein, 115 N. Y. 316; DeWitt v. Berry, 134 U. S. 306; Carter v. Crick, 4 Hurlst & N. 412; Sedalia Brew. Co. v. Sedalia Water Works Co., 34 Mo. App. 55; St. Louis Gaslight Co. v. St. Louis, 46 Mo. 121; Mathews v. Danehy, 26 Mo. App. 660; Mark v. Cooperage Co., 204 Mo. 242.    (2)    Where goods are delivered in install-ments under a contract, if a single installment is re-jected but other goods are tendered and accepted in place of those rejected, and thereafter still other install-ments are received and accepted, the purchaser thereby waives any right he might have had to cancel the con-tract on account of the one installment rejected, and he cannot lawfully cancel the contract after so accept-ing other goods in place of those rejected, and still other installments, as to which there is no ground of com-plaint whatever. Railroad v. Brydon, 65 Md. 198.    (3) It is not error to refuse an instruction which is covered by one already given.    Union Packing Co. v. Mathews, — Mo. App. —.    Defendant is bound by the position it assumes in its pleadings.    Having invoked the resale in New York as a test of market price, defendant is bound thereby.    Lawson on Contracts (2 Ed.), p. 528; Kadish v. Young, 108 Ill. 170; Nelson v. Hirsch & Sons Co., 102 Mo. App. 498; Van Horn v. Rucker, 33 Mo.

391. (4) The court properly excluded the evidence offered by defendant as to market value of gum tragacanth in New York in 1908-1909. Logan v. Carroll, 72 Mo. App. 613. (5) The exclusion of Dr. Caspari's testimony was proper. 24 Am. and Eng. Ency. (2 Ed.), 1091; Manley v. Mfg. Co., 103 Mo. App. 135; Tower v. Pauly, 51 Mo. App. 75.

STATEMENT.—Plaintiff sued defendant in the circuit court of the City of St. Louis to recover damages for defendant's failure to take and pay for 32 barrels of gum tragacanth as per contract.

It is admitted that the plaintiff and defendant entered into two contracts, the first on March 27, 1908, and the second on April 8th, 1908, by each of which plaintiff agreed to sell to defendant, and defendant agreed to buy from plaintiff, 25 barrels of gum tragacanth powdered, or a total of 50 barrels under both contracts, at 26 cents per pound, f. o. b. New York, the goods to be ordered and taken by defendant, as wanted by it, by December 31, 1908, under the first contract, and by April 1, 1909, under the second. The plaintiff alleged in its petition, which contained two counts, that up to September —, 1908, defendant took and paid for in the aggregate, 18 barrels under the first contract (a barrel containing about 300 pounds) but had taken none under the second, and thereafter declined to order or take any more, and on December 31, 1908, repudiated both contracts and notified plaintiff that it would not order or take any more gum tragacanth. The petition further alleged that upon the faith of the contracts, plaintiff had purchased sufficient gum tragacanth to meet them, and had retained the same up to and including December 31, 1908, and up to the time of filing this suit; that the market price of gum tragacanth in the City of New York on December 31, 1908, and from thence hitherto has fallen to 12 1-4 cents per pound, and that plaintiff, after due notice to defendant and

proper advertisement, had resold the 32 barrels in the City of New York at public sale, realizing only 12 1-4 cents per pound. By the first count plaintiff seeks to recover $427.50 as the difference between the contract price and the amount received upon such resale for seven barrels, and by the second count seeks to recover $1127.50 as the difference between the contract price and the amount received upon the resale of 25 barrels.

For its answers and defenses to the two counts of the petition the defendant specifically denies all allegations except those relating to the making of the contracts, and states that it canceled and rejected the contracts and refused to accept further shipments on October 21st, instead of December 31st; that the 18 barrels shipped did not contain gum tragacanth powdered as called for in the contract, but contained some powdered article, claimed by the plaintiff to be tragacanth powdered, but in reality a cheap, inferior substitute; that the cancellation and rejection and refusal were due to the failure of plaintiff to carry out its warranties and obligations to deliver gum tragacanth powdered, as called for in the contracts.

By counterclaim, defendant seeks to recover of plaintiff, $742.50 as the difference between the contract price of eighteen barrels of real gum tragacanth, and the market price of the eighteen barrels of alleged substitute, at the times and place of the shipments of the eighteen barrels, it being alleged that they were shipped in installments between March 27th and September —, 1908.

In its replies to the first and second counts of the petition and in its answer to defendant's counterclaim, plaintiff, in addition to general denials of the allegations of new matter, denies the substitution charged and asserts the genuineness of the article shipped, and then asserts that the eighteen barrels of gum tragacanth were shipped under and in pursuance of the terms of the contracts; that defendant by receiving and ac-

cepting the barrels as containing gum tragacanth in accordance with and in pursuance of the contracts, without raising any question or objecting on the ground that the contents were not gum tragacanth as called for in the contracts or were a cheap or inferior article or substitute of any kind for gum tragacanth, has estopped itself to deny or question that the article was gum tragacanth.

The evidence tended to prove that the plaintiff, a corporation dealing in gum tragacanth with its place of business in the City of New York, had a selling agent in St. Louis named D. B. Morris. Prior to March 27, 1908, it sent Morris a sample of the grade of gum it had in stock. Morris, it seems, had a personal arrangement with one Howland, dealer in ice cream materials, to furnish at thirty-two cents per pound all the gum tragacanth powdered the latter would need in his business during the season of 1908, the article being used as a filler in ice cream, much the same as gelatine. The defendant was a corporation doing business in the city of St. Louis. Morris visited defendant's president and by showing him the arrangement whereby Howland was to take his season's need of gum tragacanth, amounting, so Morris said, to thirty or forty barrels of 300 pounds each, at thirty-two cents per pound, and by promising to sell the gum for defendant, probably to Howland, induced the defendant to enter into the contracts sued upon. The contracts were in writing and were each for "25 Bbls. Powd. Gum Tragacanth." The first one, but not the second, stipulated that the article was to be "identical with sample sent to Morris." The evidence on the part of the plaintiff tended to prove that plaintiff dealt only in "Indian Gum" which its witness designated as a grade of "gum tragacanth." Between the time of making the contract and some time in September, 1908, the plaintiff shipped to the defendant eighteen barrels of "gum tragacanth powdered" as its witness called it. These were paid for by the defendant at the

contract price of twenty-six cents per pound. Defendant had an arrangement with Morris whereby he was to dispose of the gum apparently to Howland, for thirty-two cents per pound, and was to divide the difference, or 6 cents per pound, between defendant, Morris, and one Larremore, whose connection with the matter does not appear. Defendant's officers personally took no part in disposing of the eighteen barrels. It paid for them and held them in its warehouse while Morris disposed of them to Howland. Thirteen of the barrels were entirely acceptable to Howland and he took and used and paid for their contents without any objection. Three barrels he refused to take on account of defect in quality, but defendant was put to no trouble on this account as Morris took the three barrels and disposed of them elsewhere on plaintiff's account, and plaintiff delivered instead three other barrels which were entirely acceptable to Howland and which he took and used and paid for. One barrel Howland objected to Morris about on account of defect in *quality*, but took and used and paid for it upon Morris' personal assurance that either the plaintiff would give Howland a ten per cent rebate on the barrel or he, Morris, would do so personally. These difficulties defendant apparently knew nothing about, the matter being attended to by Morris alone. There is no pretense in this case that defendant or any one connected with it knew anything about gum tragacanth powdered or had ever handled or dealt in it before. This was a mere outside speculation on its part.

In September, 1908, Morris and defendant separated as to their selling arrangement. This seems to have left the defendant in the predicament of having still to take thirty-two barrels of gum tragacanth powdered as to which it knew absolutely nothing and had no customers for. It was then that defendant's president "began to investigate" as he puts it, and he discovered the objections already mentioned, which How-

land, the defendant's only customer, had made to the four barrels.

In October and again in December of the year. 1908, in response to proffers of shipment, defendant wrote to the plaintiff repudiating the contract and refusing to take any more goods under it, laying its repudiation and refusal upon the ground that the goods furnished were of poor *quality.* He had no information at that time that the goods furnished were not genuine gum tragacanth.

The evidence tended to prove the resale of the thirty-two barrels in the city of New York, after notice and advertisement, all substantially as alleged in the petition; it appearing that the price received was $1118.43, or 12 1-4 cents per pound for the thirty-two barrels sold in one lot. Plaintiff's evidence also tended to prove that the thirty-two barrels had been purchased by it to meet its contracts with defendant and that the contents of each of the thirty-two barrels were exactly like the contents of each of the eighteen barrels shipped.

Defendant was permitted without objection to show that there is a substitute in common use for powdered gum tragacanth. It consists of gum which is called in India, where it originates, Karaya or Karel gum; it is also known in the gum trade as "Indian Gum" and "Indian Gum Tragacanth." It is frequently used as a substitute for real gum tragacanth. That since the defendant entered into its contracts with the plaintiff the highest market price which said substitute had attained was 20 cents per pound.

Defendant produced as a witness Dr. Charles E. Caspari, an expert chemist, who, after this suit was filed, had tested a sample taken from the barrel which defendant still retained out of the eighteen barrels delivered under the contract. He was asked by counsel for defendant if the barrel contained "gum tragacanth powdered." Objection being made by plaintiff, counsel for defendant stated that he offered to prove by the wit-

ness that the article shipped was not gum tragacanth but a substitute bearing such a close resemblance to it that the usual and casual examination of the goods by sight and feeling would not detect the defect. The court sustained the objection and defendant duly excepted.

The court instructed the jury that the defendant was not entitled to recover on its counterclaim.

There was verdict and judgment in favor of the plaintiff and against the defendant as to the first count of the plaintiff's petition for $288.75 and as to the second count for $515.63, and also for plaintiff and against defendant on the defendant's counterclaim.

After an unsuccessful motion for a new trial, the defendant has duly prosecuted its appeal to this court.

CAULFIELD, J. (after stating the facts).—1. Defendant asserts that the court erred in refusing to allow defendant's expert witness, who had made a chemical analysis of one barrel, to testify as to the contents of it. Reviewal of the court's action involves an inquiry into the defendant's right to show upon the trial, under the circumstances of this case, first, that the eighteen barrels delivered contained an article different in kind from that called for by the contract, and second, that the thirty-two barrels sold in New York did not contain the same article described in the contracts. For undoubtedly the proof offered had a tendency to prove not only that the eighteen barrels shipped contained a mere imitation of "gum tragacanth powdered," but that the thirty-two barrels sold in New York likewise did; for plaintiff's evidence disclosed that the contents of all the fifty barrels were exactly the same. The admissibility of the evidence as proof of the contents of the eighteen barrels should in turn be considered, first, as to whether such proof is proper in order to wholly defeat plaintiff's right of recovery; and second, whether it was proper in support of defendant's counterclaim. Whether it was admissible for the purpose of wholly

defeating plaintiff's right of recovery depends, we think, upon the answers to be given to the following questions: Was a warranty as to kind to be implied from the use in the contracts of the descriptive words "gum tragacanth powdered?" Could defendant, after accepting part of the goods without knowing of their insufficiency under the contract, reject future shipments? Did the objection that the goods delivered were not of the contract description come too late? Did the fact that defendant rejected upon the ground of defect in quality prevent it relying upon the after-discovered difference in kind? We have no difficulty in answering the first question in the affirmative. The testimony in this case shows that "gum tragacanth powdered" is distinctly descriptive of a particular article, according to a known mercantile classification. The contract was not as to specific goods, but as to *any* goods, of a particular kind; and in such case the designation used is a condition going to the essence of the contract. "In such cases the description of the goods is shown by the terms of the order, and the accuracy of the description is necessarily a condition, as it is for goods of that kind only that the buyer contracts." [Benjamin on Sales, p. 608 (5 Ed.).] To breach such a condition "is as if A. should sell a horse to B. and deliver a cow instead." [Catchings v. Hacke, 15 Mo. App. 51; see; also, Whitaker v. McCormick, 6 Mo. App. 114; Gaus v. Magee, 42 Mo. App. 307.] It was a distinct breach of this implied warranty or condition if plaintiff delivered, instead of the "gum tragacanth powdered" as contemplated by the contract, an article which "was not gum tragacanth powdered but a substitute which bears such a close resemblance to gum tragacanth powdered that the usual and casual examination of the goods by sight and feeling would not detect the defect," as defendant distinctly offered to prove by the evidence excluded. We have carefully considered in this connection the suggestion made by plaintiff's counsel in his brief, that the evidence in

the case conclusively shows that the parties received
the identical article they contracted for, whether it was
properly called gum tragacanth -or not; but we cannot
agree with it.    There may have been evidence to that
effect, but to say the least, it may be equally inferred
from the evidence that a clever substitute was palmed
off upon defendant for real gum tragacanth.    But plain-
tiff insists that the sale was by sample and that if the
goods furnished or tendered corresponded with the sam-
ple, it was sufficient.    This contention could pertain only
to the seven barrels remaining undelivered under the
first contract.    The second contract did not contemplate
a sale by sample.    But we do not understand that a
sale by sample relieves a seller from the obligation as-
sumed by him in selling by description.    If the sample
is an imitation not discoverable by mere inspection, it
does not follow that the bulk which follows may also
be an imitation of what the contract calls for.

And the second question can also be answered in
the affirmative.    In Morrison v. Leiser, 73 Mo. App. 95,
98, the court held that a vendee who agrees to purchase
goods of a certain quality to be delivered in install-
ments (as in the case here), will be allowed to revoke
the order for future shipments because the prior ship-
ments did not meet the requirements of the contract
of sale.    The language used by the court in the opinion
is peculiarly applicable to the case at bar.    "It seems
to us that the agreement to sell, as in the case at bar,
is one executory contract; that before plaintiffs can be
allowed to recover they must show a substantial com-
pliance with the terms of said contract; and if, during
the delivery of the goods, the vendor makes substantial
breach of any of its conditions as to the quality of goods,
then the vendee may rescind the contract as to such fu-
ture deliveries and decline to take any more goods even
though such latter instalment may, on inspection, be
found equal in quality to the terms of the contract."
There is no pretense that the defendant knew at the

time of its acceptance of the goods that they failed to comply with the contract, so that the element of its having waived its right to refuse to go on with the contract by knowingly and voluntarily accepting inferior goods is not in the case. The trial court in sustaining the objection to the question stated that it did so on the authority of Manley v. Crescent Novelty Mfg. Co., 103 Mo. App. 135, 77 S. W. 489. That case declared that in determining to refuse property and rescind the sale by tendering it back to the vendor, the purchaser is required to act within a reasonable period, and that where the period is so long that its unreasonableness is apparent, the court may declare it unreasonable as a matter of law. The facts in this case are essentially different. That case was one where the vendee had attempted to rescind the contract as to the goods already delivered and paid for and to recover back the purchase price paid therefor. In this case the vendee is resisting an attempt to make it pay for goods which it has not received and which plaintiff can compel it to pay for only by showing compliance on plaintiff's part with the contract.

The present case can hardly be said to involve the doctrine of rescission at all. It is rather a case where the purchaser claims to be excused from further performance because of the prior breach on the part of the seller. Rescission involves restoring the *status quo* of the parties and that is impossible in the present case, as it was in Morrison v. Leiser, supra, and in Grafeman Dairy Co. v. St. Louis Dairy Co., 96 Mo. App. 495, 70 S. W. 390, where the right to refuse later instalments was upheld in cases like the present. This brings us to the correlated question of whether defendant's basing its refusal to continue with the contract upon an untenable ground estopped it to set up a proper ground when sued for its alleged breach of contract. It has been held in New York and Michigan that where a buyer objects to a tender on specified grounds all others are waived,

and the seller in order to recover need only prove compliance with the contract in the particulars to which the objections related. [Littlejohn v. Shaw, 159 N. Y. 188; Ginn v. Clark Co., 143 Mich. 84.] But those decisions seem contrary to principle. We see no reason why a buyer, having more than one reason for rejecting goods, conclusively admits, by assigning one, that there is no other. Such action on his part might be evidence that there is only the one objection he specifies, but that is all that can be said. The rule laid down in those cases is not the rule in this state as to other contracts and we do not see why it should be applied to contracts of sale. In Hayden v. Grillo, 26 Mo. App. 289, it was held that the fact that the defendant refused to comply with his agreement to pay commissions to a real estate agent upon another ground did not do away with the necessity, on the part of the plaintiffs, of showing a performance of their undertaking on their part, in order to recover the price of their services. Then too, in the cases mentioned, the rule was laid upon the ground of waiver, which necessarily presumes knowledge of the defect to which the waiver relates, while in the case at bar there was no knowledge on the part of defendant of the defect now being discussed at the time when the other ground was assigned.

We conclude that the evidence excluded should have been admitted in evidence, as tending to prove a fact going to wholly defeat plaintiff's right to recover.

In our judgment the evidence was also admissible under defendant's counterclaim. It is immaterial that defendant sold the eighteen barrels at an increased price, as plaintiff suggests. [Brown v. Emerson, 66 Mo. App. 63.]

The evidence excluded was also admissible for the purpose of determining whether the alleged re-sale in New York was a proper criterion of the market value of the thirty-two barrels. We find no difficulty in holding that in order that such a sale should have the effect

desired it should be a sale of the thing described in the contract and not some inferior substitute.

For the error noted the judgment of the court in favor of the plaintiff upon its alleged causes of action and upon the counterclaim is reversed and the cause remanded. *Reynolds, P. J.,* and *Nortoni, J.,* concur.