WOLDERT GROCERY COMPANY, Appellant, v. ISAIAH PILLMAN et al., Respondents.

**St. Louis Court of Appeals. Argued and Submitted April 5, 1915. Opinion Filed May 4, 1915.**

1. SALES: Refusal to Accept Goods: Assignment of Reasons. A buyer having more than one reason for rejecting the goods does not, by assigning one reason, conclusively admit that there is no other, and he may justify his refusal on another ground.

2. ————: Contracts: Construction: Question for Court. The construction of a contract of sale, evidenced by correspondence between the parties, is for the court.

3. ————: Place of Delivery. Parties bargaining for a delivery of goods and mentioning no place of delivery are presumed to intend delivery at the place of business of the seller or where the articles sold are situated, and a delivery at any other place is not a good delivery.

4. ————: ————: Performance of Contract. A wholesale dealer in fruit distributed circulars headed with its name, dated at the place where it did business, and advising the trade that it had strawberries to offer in car lots, that it was the sales agent of a growers' union controlling most of the berries in the vicinity of the place of business, and that it had engaged a certain person to do inspecting. A buyer, being advised of the market price, ordered a carload by telegram, addressed to the dealer at its place of business, and the dealer answered from there, accepting the order. Held, that the buyer could assume that he was buying strawberries produced in the vicinity of the place where the circular was dated, by local growers there, and that the berries would be shipped from that place, and that, before shipment, the berries would be inspected by the inspector named in the circular; and the dealer, in shipping berries produced elsewhere, from another point, and inspected by another, did not comply with the contract, and the buyer was justified in rejecting the shipment.

5. ————: ————: Customs and Usages: Rejection of Evidence. In an action for the purchase price of perishable goods which the buyer refused to accept, defendant set up as a defense that, inasmuch as the contract was silent concerning the place of delivery, delivery should have been made at the seller's place of business, and was not made there, but was attempted to be made elsewhere. Plaintiff asked a witness if he was "familiar

with the custom of the trade as to where goods are shipped from by the general produce man, when he makes an order from his central place of business, as to whether it is the custom to ship all the goods from the central place of business or whether he ships from other places." The court, in sustaining an objection to the question, remarked that there might be a state of facts that would justify the conclusion that a person is bound by custom, but such a state of facts had not been shown. Plaintiff offered no further testimony to meet the suggestion of the court. *Held*, that the court did not err in sustaining the objection.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

AFFIRMED.

*James F. Conran, John L. Corley* and *Edgar P. Holly* for appellant.

(1) The telegrams constitute a contract for the sale by plaintiff and the purchase by defendant of one carload of strawberries. Elam v. Telegraph Co., 113 Mo. App. 588; Reynolds v. Telephone Co., 81 Mo. App. 223; Thompson v. Thorne, 83 Mo. App. 241; Fruit & Trading Co. v. McGuire, 81 Minn. 232. (2) The strawberries were properly shipped, and were of the kind and quality ordered and were in good merchantable condition. (3) Delivery of the strawberries by plaintiff to the common carrier, properly consigned to the defendants, was constructive delivery to the defendants. Fruit & Trading Co. v. McGuire, 81 Minn. 232; 1 Benjamin on Sales, secs. 127, 144, 147; Gates v. Carqunez, 78 Cal. 439; Lord v. Edwards, 148 Mass. 476; Comstock v. Affoelter, 50 Mo. 411; Graff v. Foster, 67 Mo. 512; Scharff v. Meyer, 133 Mo. 428; Baker & Son v. McKinney, 87 Mo. App. 361; Bloom & Co. v. Haas, 130 Mo. App. 122; Calhoun v. Paule, 26 Mo. App. 282; Waples v. Overacker, 77 Tex. 11; Woods v. Half, 44 Tex. 636; Craig v. Marx, 65 Tex. 654; Gulf Ry. v. Brown, 66 S. W. 341; Story on Sales (4 Ed), secs. 306,

308; Tiedeman on Sales, sec. 96; Benjamin on Sales (5 Ed.), p. 682; 35 Cyc., p. 172; 24 Am. & Eng. Ency. of Law (2 Ed.), p. 1069. (4) Delivery of the strawberries to the carrier at Lindale was a constructive delivery to the defendants. Baker & Son v. McKinney, 87 Mo. App. 361; Baird & Bros. v. Pratt & Co., 6 Ind. Ter. 38; 35 Cyc., p. 172; Mobile Fruit Co. v. McGuire, 87 Minn. 232; Cohen v. Plute, 69 N. Y. 348; Nelson v. Trading Co., 125 Pac. 777; Warehouse, etc. Co. v. Toomy, 144 Mo. App. 516; Salmon v. Box Co., 147 Fed. 408; Harper v. State, 121 S. W. 737; Cureton v. State, 136 Ga. 91; Swanke v. McCarty, 81 Wis. 109; Sarbecker v. State, 65 Wis. 174. (5) Rejection of the berries on the specific ground that the berries were "too bad," was a waiver of other grounds for rejection. At least it is prima-facie evidence that defendants did not object to the shipment from Lindale. Littlejohn v. Shaw, 159 N. Y. 189; Gunn v. Coal Co., 106 N. W. 867; Fruit Co. v. Roberts Co., 8 Pa. Prep. Ct. 506; Keswick v. Rafter, 165 N. Y. 653; Ungerer Co. v. Maul C. & F. Co., 134 S. W. 56. (6) The court erred in rejecting evidence to prove the custom and usage of trade in the produce business, governing place of shipment to fill orders to ship produce. Taylor v. Bailey, 169 Ill. 181; Cook on Corp., p. 115; Meechim on Sales, sec. 175; Lillard v. Ky. Dis. & W. Co., 134 Fed. 168; 2 Elliott Const., sec. 1710; Sontica v. Kellermann, 18 Mo. 509; Staroske v. Pulitzer Pub. Co., 235 Mo. 67. (7) Upon a breach of a contract of sale by the vendee the vendor may at once, or within a reasonable time, resell the property and recover the difference between the contract price and the net amount realized upon the resale, provided he gave due notice to the vendee of his intent to resell. Oehler v. Fruit Co., 162 Mo. App. 446; Logan v. Carroll, 72 Mo. App. 613; Rickey v. Tenbroech, 63 Mo. 563; Olsen v. Hirsch & Sons Co., 102 Mo. App. 513; Baker & Sons v. McKinney, 87 Mo. App. 316;

Van Horn v. Reicker, 33 Mo. 319; Anderson v. Frank, 45 Mo. App. 486; Ingram v. Matthews, 3 Mo. 209; Williston on Sales, Sec. 546; 2 Schouler Personal Property (3 Ed.), par. 546; Story on Sales, par. 314; Benjamin on Sales (5 Ed.), p. 957. Mobile Fruit Co. v. McGuire, 81 Minn. 232; Waples v. Overacker, 77 Tex. 11; Wilson v. Gregory, 84 Pa. 356; Wrigley v. Cornelius, 162 Ill. 92.

*Dawson & Garvin* for respondents.

(1) The petition, in substance and legal effect, alleges that the place of delivery of carload lot in question was Tyler, Texas, and that the berries were delivered there. The burden was on plaintiff to prove that the carload lot was delivered there, and as it failed. to do so, the nonsuit was proper. Norrington v. Wright, 115 U. S. 209; Filley v. Pope, 115 U. S. 220; Janney v. Sleeper, 30 Minn. 474; Lodwick Lumber Co. v. E. A. B. Lumber Co., 35 Okla. 797. (2) The plaintiff's offer in this case was not of indeterminate strawberries, but of a certain kind of berries; and was an offer of strawberries by description, namely, strawberries raised around Tyler, Texas, and which had been inspected by a certain named inspector, namely, the "Produce Reporter Company;" and as the berries in question admittedly were raised around Lindale, Texas, and had never been inspected by the "Produce Reporter Company," defendants never became bound to receive them. Norrington v. Wright, 115 U. S. 209; Ungerer & Co. v. Cheese & Fish Co., 155 Mo. App. 105; Allan v. Lake, 18 Q. B. (N. S.) 560; Benjamin on Sales (5 Ed.), pp. 607-612; 2 Mechem on Sales, secs. 1210, 1211; Baird Bros. v. Walter Platt & Co., 6 Ind. Ter. 38. (3) The business between plaintiff and defendant in this case having been conducted wholly by correspondence, the question is one of construction and therefore one of law for the court, not of fact for

the jury. Benjamin on Sales (5 Ed.), p. 684. (4) The court construing the telegrams which passed between appellant in Tyler, Texas, and respondents in St. Louis, Missouri, on April 28, 1906, in connection with appellant's letter of April 7, 1906, and subsequent undisputed transactions correctly interpreted appellant's telegram as an offer to sell a carload of choice to fancy Klondike strawberries raised around Tyler, Texas, by the Tyler Fruit and Truck Growers Union and inspected by the Produce Reporter Company, which had been shipped from Tyler, Texas, and was then rolling at one dollar and seventy cents per crate, and another like car to be shipped from Tyler, Texas, that day, namely, April 28, 1906, on same terms as formerly, namely, cash there or bank guarantee; and interpreted respondents' telegraphic answer as an acceptance of the offer as made. Benjamin on Sales (5 Ed.), p. 681. (5) As the only performance shown by appellant of the said contract on their part was directing Frank M. Boyd at Lindale, Texas, by long-distance telephone, between five and six o'clock on the afternoon of said Saturday, April 28, 1906, to deliver Pillman Brothers in St. Louis, A. R. T. car 10799, then being loaded with berries grown around Lindale, Texas, by the Lindale Fruit Growers and Shippers Union, which was being inspected by John Stewart, an employee of said Boyd, as secretary and manager of said union, and which car did not leave Lindale until the afternoon of the next day, namely, April 29, 1906, the court properly instructed the jury at the close of plaintiff's case that under the pleadings and the evidence plaintiff (appellant here) could not recover. Ungerer v. Cheese & Fish Co., 155 Mo. App. 95; Filley v. Pope, 115 U. S. 213; Nelson v. Imperial Trading Co. (Wash.), 125 Pac. 777; Van Valkenburg v. Gregg, 45 Neb. 654; Miller v. Somerset, Etc., Lumber Co. (Ky.), 51 S. W. 615; Lodwick Lumber Co. v. E. A. B. Lumber Co., 35 Okla. 797. (6) Defendants properly presumed that they

were buying from the sales agent and general manager of the Tyler Fruit and Truck Growers Union choice to fancy Klondike strawberries raised around Tyler, Texas, inspected by the Produce Reporter Company and to be shipped on that day, April 28, 1906, from Tyler, Texas, on one of the four fruit trains leaving Tyler between six and eleven o'clock Saturday night and due to arrive on regular schedule in St. Louis within thirty-six to forty hours, that is on Monday, April, 1906; and they were not bound to receive from any other person strawberries grown elsewhere and inspected by some other person and shipped from some other place on some other day, and which did not arrive in St. Louis until Tuesday, May 1st, and then in a rotten condition. Lewis v. Thomas, 14 Mo. App. 581; Arkansas Smelting Co. v. Belden, 127 U. S. 387; Nelson v. Imperial Trading Co. (Wash.), 125 Pac. 777; Smith v. Shell, 82 Mo. 218. (7) If delivery or shipment is not made in accordance with the terms of the contract it is not considered that the delivery to a common carrier is made to the buyer's agent and the title and risk remain in the seller. 24 Am. & Eng. Ency. Law (2 Ed.), p. 1071, and cases cited; Benjamin on Sales (5 Ed.), pp. 737, 738; Filley v. Pope, 115 U. S. 213; Janney v. Sleeper, 30 Minn. 473; Lodwick Lumber Co. v. E. A. B. Lumber Co., 35 Okla. 797. (8) Defendants assigning one reason instead of another for their refusal to accept the strawberries did not do away with the necessity on the part of the plaintiff of showing a performance of their undertaking on their part in order to recover. Hayden v. Grillo, 26 Mo. App. 289; Ungerer v. Cheese & Fish Co., 155 Mo. App. 95; Van Valkenburg v. Gregg, 45 Neb. 654. (9) To make relevant evidence of any custom or usage of trade it must be pleaded, and certainty, generality, fixedness and uniformity are essential elements of custom which form part of a contract, and it can never contradict, destroy or modify language which is other-

wise plain. Staroske v. Pulitzer Pub. Co., 235 Mo. 67; Lillard v. Ky. Dis. & W. Co., 134 Fed. 168.

REYNOLDS, P. J.—Action by plaintiff, a corporation, appellant here, against the defendants, partners, to recover $788.40, with interest and costs, the cause of action, as averred in the petition, being upon a contract under the terms of which it is alleged plaintiff agreed to sell and deliver to defendants, "on board cars at shipping point," a carload of strawberries at a price named. Alleging fulfilment of the terms of the contract on its part and that it had delivered to defendants "on board cars" a load of merchantable strawberries of the kind and grade ordered and that defendants had accepted, received and agreed to pay for them, plaintiff avers that on the arrival of the car of berries at St. Louis, defendants having refused to pay for them, plaintiff had taken possession of the berries, sold them for the best price obtainable and credited defendants on the purchase price with $27.60, the amount so received. Judgment is asked for the balance of the purchase price.

The answer was general denial.

At the close of the testimony offered by plaintiff, defendants asked the court to instruct the jury that under the pleadings and evidence plaintiff could not recover and that their verdict should be for defendants. The court having heard arguments on this motion, announced that it had reached the conclusion that it should be given. Whereupon plaintiff took a nonsuit with leave to move to set it aside. That motion being overruled, plaintiff duly perfected its appeal to our court.

While there are other questions as to the quality of the berries and their condition when shipped presented, the real point turns on the question of the place of delivery contracted for by the parties, defendants claiming that the contract called for delivery at Tyler,

Texas, when, as the evidence shows, the delivery claimed to have been made was at Lindale, Texas. That, indeed, is the only point in the case necessary to its decision.

In sustaining the motion for a directed verdict, the court said that he had reached that conclusion for the reason that "the facts in the case are such that I do not think that the defendants can be held to have agreed to accept this carload of berries at Lindale." If this view which the learned trial judge took of the contract is correct, the judgment of nonsuit must stand, and the motion of the plaintiff to set the nonsuit aside was properly overruled.

It appears by the evidence in this case that the berries were loaded in a refrigerator car on the International & Great Northern Railroad at Lindale, a point about thirteen miles from Tyler, on the 28th of April, 1906, and from there consigned to defendants at St. Louis. There is but one train carrying fruit or refrigerator cars from Lindale to St. Louis, that train leaving Lindale between six and seven o'clock in the evening, going thence by the International & Great Northern Railroad to Troupe and Longview, and from there by the Texas & Pacific Railroad to Texarkana, and from Texarkana via the St. Louis, Iron Mt. & Southern Railroad to St. Louis.   There were three fruit trains from Tyler over what is known as the Cotton Belt, going direct from Tyler to Texarkana and thence to St. Louis.  The time over either route from Tyler, or for that matter from Lindale, was about the same, that is between thirty-six and forty hours, provided that the loading at Lindale was in time to have the car go out on the only fruit train that left there during the twenty-four hours.  This particular car of berries was not loaded in time to catch the train from Lindale on the evening of the 28th, and did not leave there until the evening of the 29th, and instead of arriving at St. Louis on the 30th of April, as it

would have done if sent on the 28th of April from either Tyler or Lindale, it arrived in St. Louis on the 1st of May, the strawberries in unmerchantable state, as the evidence of plaintiff itself shows.

It appears that the price was "f. o. b. cars," that, as we understand, meaning that when loaded on cars, the berries were to be treated as the property of the buyer and there delivered to it.

The reason assigned at the time by the defendants for refusing to accept the shipment was the condition of the berries, it being claimed that as it appeared that the car had been properly iced during the whole period that the berries were in it, that they were so defective when shipped that for that reason, and by reason of the delay of some twenty-four hours, they had become worthless. At the trial, however, the defense relied upon, as developed by the testimony of plaintiff itself, turned more on the fact that the contract of the parties required the delivery on car at Tyler and that delivery having been made at Lindale instead of Tyler was not a delivery under the contract. It was on this theory that the trial court sustained the motion of defendants which drove plaintiff to a non-suit.

At the outset we might as well dispose of the contention of the learned counsel for appellant, that respondents are confined to the cause of rejection which they originally made and cannot now set up a different cause. In a very carefully considered case where this precise question was involved, our court held that a buyer having more than one reason for rejecting goods does not, by assigning one reason, conclusively admit that there is no other and may justify his refusal to accept the goods on another ground; that it did not do away with the necessity on the part of plaintiff of showing a performance of an undertaking in order to a recovery. [Ungerer & Co. v. Louis Maull Cheese & Fish Co., 155 Mo. App. 95, 134 S. W. 56.] This disposes of

the contention of counsel for appellant on that proposition adversely to that contention.

As the transaction between plaintiff and defendants was conducted wholly by correspondence, the legal effect of that correspondence—the construction of it—was one of law for the court, not of fact for the jury. The court construed the correspondence between the parties as calling for delivery on board cars to defendant at Tyler, Texas, and therefore held that delivery at Lindale, Texas, was not a delivery within the terms of the contract. So, as before noted, the question is, was the court correct, under the evidence, under the correspondence showing the contract, in the conclusion at which it arrived?

The petition in the case is silent as to the place where delivery was to be made, but it is set out in the preamble, or as matter of inducement, that the plaintiff is a corporation duly incorporated and engaged in the produce business "at Tyler, in the State of Texas." Then follows the averment that the parties had entered into a contract by the terms of which plaintiff agreed to sell and deliver to defendants on board cars at shipping point, one carload of strawberries. It will be noted that neither the place at which the contract was made nor the place of delivery agreed upon, nor the shipping point are set out.

Learned counsel for respondents contend that in substance and in legal effect, this petition alleges the place of delivery to be Tyler, Texas; that the berries were to be delivered there, and following this, they contend that the burden is on plaintiff to prove that the carload lot was delivered there, and that having failed to do that the instruction for a nonsuit or demurrer was proper. Whether the petition is to be interpreted as fixing the place of delivery at Tyler, the home place of business of plaintiff, we need not determine. But that the place of delivery is the place of business of the seller, unless more appears, seems

clear and is distinctly defined in the English Sales Good Act of 1893 (56 and 57 Victoria, chap. 71). By section 29 of that act it is provided: "Whether it is for the buyer to take possession of the goods or for the seller to send them to the buyer is a question depending in each case on the contract, express or implied, between the parties. Apart from any such contract, express or implied, the place of delivery is the seller's place of business, if he have one, and if not, his residence, provided that, if the contract be for the sale of specific goods which to the knowledge of the parties when the contract is made are in some other place, then that place is the place of delivery."

This seems to have been the rule before and independent of that Act. Referring to it as in force before this Act, Mr. Benjamin, at section 682 (Bennett, 6th Am. Ed.) has said:

"As to the *place* where delivery is to be made, when nothing is said about it in the bargain, it seems to be taken for granted almost universally that the goods are to be at the buyer's disposal, at the place where they are when sold." The author then quotes 2 Kent's Commentaries (12 Ed.), p. 505, to the effect that "if no place be designated by the contract, the general rule is, that the articles sold are to be delivered at the place where they are at the time of the sale. The store of the merchant, the shop of the manufacturer or mechanic, and the farm or granary of the farmer, at which the commodities sold are deposited or kept, must be the place where the demand and delivery are to be made, when the contract is to pay upon demand and is silent as to the place."

We think we are safe in saying that this is the general rule of law; that parties bargaining for a delivery and mentioning no place of delivery are presumed to intend delivery at the place of business of the seller, or where the articles sold are, and a delivery at any other place is not a good delivery. So the

Supreme Court of the United States held in Hatch v. Oil Company, 10 Otto 124, l. c. 134.

In Norrington v. Wright, 115 U. S. 188, p. 209, that court quotes with approval this from Lord Blackburn in Bowes v. Shand, 2 App. Cas. 455:

"If the description of the article tendered is different in any respect, it is not the article bargained for, and the other party is not bound to take it. I think in this case what the parties bargained for was rice, shipped at Madras or the coast of Madras. Equally good rice might have been shipped a little to the north or a little to the south of the coast of Madras. I do not quite know what the boundary is, and probably equally good rice might have been shipped in February as was shipped in March, or equally good rice might have been shipped in May as was shipped in April, and I dare say equally good rice might have been put on board another ship as that which was put on board the Rajah of Cochin. But the parties have chosen, for reasons best known to themselves, to say: We bargain to take rice, shipped in this particular region, at that particular time, on board that particular ship; and before the defendants can be compelled to take anything in fulfilment of that contract it must be shown not merely that it is equally good, but that it is the same article as they have bargained for—otherwise they are not bound to take it."

So in Filley v. Pope, 115 U. S. 213, the Supreme Court of the United States has said (l. c. 220):

"The thing sold and described in the contract, is '500 tons No. 1 Shott's (Scotch) pig iron,' to be shipped 'from Glasgow as soon as possible.' It is not merely 500 tons of iron of a certain quality; nor is it such iron to be shipped as soon as possible from any Scotch port or ports; but it is iron of that quality to be shipped from the particular port of Glasgow as soon as possible. The court has neither the means, nor the right, to determine why the parties in their contract

specified 'shipment from Glasgow,' instead of using the more general phrase 'shipment from Scotland,' or merely 'shipment,' without naming any place; but is bound to give effect to the terms which the parties have chosen for themselves. The term 'shipment from Glasgow' defines an act to be done by the sellers at the outset, and a condition precedent to any liability of the buyer. The sellers do not undertake to obtain shipment, nor does the buyer agree to accept iron shipped, at any other port. The buyer takes the risk of delay in getting shipment from Glasgow, or of delay or disaster in prosecuting the voyage from Glasgow to New Orleans. But it does not take the risk of delay or of sea perils which may occur in course of the different voyage from Leith to the same destination.''

So, also, it is held by the Supreme Court of Minnesota in Janney v. Sleeper, 30 Minn. 473, where at page 474, it is said:

''If no place be designated by the contract, the general rule is that the articles sold are to be delivered where they are at the time of the sale. . . . This rule is not changed by the fact that plaintiffs did not have the goods on hand at their place of business at the time of the sale, but had to procure them elsewhere in order to fulfill their contract. Potentionally and prospectively the goods were as if then situate in their store at Minneapolis. Hence, in the absence of any evidence as to the place of delivery, it would be presumed to be at Minneapolis. To overcome this presumption, some evidence would be required tending to show that some other place was agreed upon.''

So that, irrespective of the averments, or lack of averments in the petition, of a place of delivery, and granting that we are not to indulge in the presumption that merely because the place of business of the plaintiff named in the petition is Tyler, Texas, that it follows from that averment that the delivery was to

be made there, the question recurs on the evidence as
to what the contract between the parties was as to
place of delivery, and whether that evidence war-
ranted the trial court in holding, as a matter of law,
that delivery, or place of shipment was to be Tyler,
Texas.

It appears that preliminary to the ordering of
this particular carload of strawberries that plaintiff
had sent out a circular letter to the trade concerning
their business of dealers in fruit, this circular headed
with the name of the plaintiff, describing it as an
incorporated company and as pecan exporters, whole-
sale grocers, fruit and produce shippers. It is dated
"Tyler, Texas, April 7, 1906," and is headed "Straw-
berries" and proceeds:

"Gentlemen:

Our strawberry season will begin about April
20th, and we wish to remind the trade that we will have
Klondike Berries to offer in straight car lots; how-
ever, about three-fourths the acreage here are Lady
Thompsons. We are the sales agents and General
Managers of the Tyler Fruit & Truck Growers Union.
This Union controls most of the berries, potatoes, to-
matoes and peaches raised around Tyler and we can
supply your wants on short notice.

"Our terms this season will be the same as in for-
mer years, 'cash here or bank guarantee,' and to those
who have never done any business with us, we invite
you to look us up and make inquiry as to who we are,
our responsibility, and whether you can count on get-
ting a square deal or not. We have engaged the Pro-
duce Reporter Company to do all our inspecting here,
and you can depend on getting the exact grades you
buy whether your representative is on the ground or
not."

It appears that before the transaction as to the
particular car of berries here involved, defendants
had ordered one or more cars that season from plain-

tiff over which no dispute arose. · Defendants then ordered another car by wire, and plaintiff accepted the order by wire, defenda..'s wiring to plaintiff at Tyler, plaintiff answering from there. No details beyond price and quantity are in these messages.

It does not appear that any preliminary or other correspondence took place between the parties other than by this circular and by these telegrams. On or about April 28, 1906, defendants being advised of the market price of this particular quality of strawberries · at that date, ordered a car from plaintiff. That is all of it. No other communication. From these, defendants had a right to assume that they were not only buying strawberries produced in the vicinity of Tyler by local growers named, and that they were to be of a certain kind and quality, and that before shipment the berries were to be there inspected by the fruit inspectors named in this circular letter, but that they were to be delivered to them and shipped from Tyler. In point of fact the car in controversy was bought by plaintiff from another concern at Lindale, the berries grown by a different party than the one named, and the car billed from Lindale to defendants at St. Louis, the berries inspected at Lindale, and as the evidence tends to show, very imperfectly, by a farmer, who had very little experience in the matter of inspecting and who was acting for an inspecting concern other than the one named in the circular. It is clear from all the testimony in the case, that neither the conditions as to the origin of the berries, their inspection and as to the point of delivery, as set out in the trade circular, were complied with by plaintiff.

A point is made by counsel for appellant on the action of the trial court in excluding a line of testimony offered. After having introduced the evidence as to the contract and the transaction, plaintiff introduced a witness whom it asked if he was "familiar with the custom of the trade as to where goods are

shipped from by the general produce man, when he makes an order from his central place of business, as to whether it is the custom to ship all the goods from the central place of business or whether he shipped from other places." This was objected to as incompetent, irrelevant and immaterial. The court sustaining that said: "You cannot vary it by custom." Whereupon counsel for plaintiff said that he understood the law to be that "where a man enters into a certain kind of business he adopts the customs and the rules of that business and does business according to the rules and customs that prevail in that kind of business." To which the court answered: "There might be a state of facts that would justify that conclusion, but it has not yet appeared here. You have not produced a state of facts yet that would justify the court in permitting that testimony to go in." To this ruling plaintiff excepted. This was the end of the offer with respect to proof of custom, the plaintiff not following it up by any offer of testimony to meet the suggestion of the court. We see no error in the ruling of the court on this.

Without discussing other points suggested, our conclusion is that there is no error in the action of the learned trial judge in sustaining the demurrer to the testimony and in refusing to set aside the nonsuit. The testimony conclusively shows that delivery at Tyler, of Tyler grown berries, to be inspected at Tyler by local inspectors there, were bargained for. Defendants were not bound to accept delivery of any substituted berries, or of berries delivered at a different point.

The judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.,* concur.