## CAMPBELL PRINTING PRESS AND MANUFACTURING COMPANY v. MARSH ET AL.

1. CONTRACTS—RESCISSION.

An entire contract is indivisible, and upon the nonperformance of a substantial part, the party aggrieved may repudiate the whole.

2. SAME.

Where one of the parties to a contract seeks to rescind, he must place the other *in statu quo*, but this rule does not extend so far as to entitle the party in fault to be saved from all loss.

3. APPEARANCE WAIVES ERROR IN SERVICE OF SUMMONS.

Error in the service of summons is waived by a general appearance and counterclaim by the defendant.

*Appeal from District Court of Arapahoe County.*

ACTION for rescission of contract. Judgment for plaintiffs. Defendant appeals.

The facts sufficiently appear in the following opinion of Hon. A. J. Rising, district judge:

" On the first day of November, 1889, the defendant entered into a written agreement with the plaintiffs by which it agreed to sell to the plaintiffs, for the sum of $3,000, one of its No. 1 four-roller job and book printing presses, and one secondhand seven-column quarto Dexter hand-feed folder with paster and trimmer; the press to be delivered on cars at Denver and the folder to be delivered on cars at Chicago, as soon as possible. Payment to be made by plaintiffs as follows: $500 cash down, and the balance in ten consecutive quarter-yearly payments of $225 each, and $250 three months thereafter, the deferred payments to be secured by first mortgage on the property contracted to be sold, and upon the execution and delivery of said mortgage, or the payment of said purchase price in cash, the defendants were to execute and deliver to the plaintiffs a good and sufficient bill of sale of said property.

" The printing press was delivered and set up by the defendant on said first day of November, and plaintiffs on said day made, executed and acknowledged a mortgage on the property contracted to be sold, in which mortgage it was stipulated that the folder was to be delivered 'in about two weeks.' The said mortgage was given to secure the payment of the sum of $2,500, evidenced by eleven promissory notes dated November 9, 1889.

" Thereafter the plaintiffs notified the defendant that plaintiffs had rescinded the contract of purchase, and this action is brought by the plaintiffs to recover of the defendant the sum of $500 on account of the cash payment made by plaintiffs to defendant under said agreement, and the further sum of $67.50 on account of premium paid by plaintiffs for insurance on said press under the terms of said agreement; and require defendant to cancel and deliver up to plaintiffs said promissory notes, and to have said mortgage declared null and void.

" Plaintiffs base their claim of the right to rescind said agreement upon an alleged failure of defendant to perform

said agreement, on its part, in not furnishing and delivering the folder which it contracted to furnish and deliver.

"It is disclosed by the evidence that on the 13th of November, 1889, the plaintiffs telegraphed to the defendant at Chicago, in cipher, in regard to the transaction, but it does not appear what the telegram was, and there is no evidence of any reply to that telegram.

"On December 5, 1889, plaintiffs telegraphed to defendant as follows: 'When will you ship the folder? Answer immediately.'

"On December 6, 1889, defendant telegraphed to plaintiffs as follows: 'Dexter cannot make folder hand-feed. Shall we send you a Forsaith at $150 less?'

"On December 10, 1889, plaintiffs telegraphed to defendant as follows: 'Wire me if you are to comply with contract. Damage by the delay. Give discount keeping folder.'

"On December 10, 1889, defendant wrote to plaintiffs as follows: 'Your favor of November 26th, at hand. We were waiting to ascertain if Dexter could make hand-feed of the machine.'

"On December 11, 1889, defendant telegraphed plaintiffs as follows: 'Have tried without success to buy secondhand folder. Advise your taking the Forsaith. Will give you as much satisfaction as the Dexter.'

"On December 13, 1889, defendant wrote to plaintiffs as follows:

"'Gentlemen:—Your telegram of 10th inst. *in re* folder received, and in reply we wired you as follows: "Have tried without success to buy second-hand folder. Advise your taking the Forsaith. Will give you as much satisfaction as the Dexter," and await your reply.'

"On December 18, 1889, plaintiffs wrote to defendant as follows:

"'Gentlemen:—Your failure to deliver the Dexter folder according to contract has caused us great inconvenience. When we made the contract with your agent, Mr. John H. Vivian, Nov. 1, 1889, he assured us that you would deliver

in addition to the press a complete secondhand Dexter folder in about two weeks' time. We have lost a great deal of money and time by not being able to take contracts and work which have been offered us and are assured by our attorneys that your action in the matter affords us a good cause either for rescinding the contract altogether or for bringing suit for breach of contract and that very substantial damages could be recovered should we elect to bring suit. We do not wish, however, to act hastily in the matter nor in any unfair way toward you, and therefore will make the following proposition :

" ' If you are willing to return to Mr. H. G. Goodrich, 2454 Lawrence street, Denver, Colorado, as agent for and a member of the firm of Marsh & Goodrich, the five hundred dollars ($500) already paid on the contract by Mr. Goodrich, as well as the notes given by our firm to secure further payments and the cost of insuring the press and folder, amounting to sixty-seven and one half dollars ($67.50) which are insured in your favor, thus placing us in the same position as we were before making the contract, we will agree that you may rescind the contract, take back the press which is in the same condition as when delivered to us, the costs of removing, packing, etc., to be borne by you, and we will execute a valid bill of sale of the same and waive all damages we have suffered from your delay and refusal to carry out the agreement. Please notify our Mr. Goodrich at once of what you desire to do in the matter, or we shall be compelled to take legal steps to enforce our rights.'

" On December 19, 1889, defendant wrote to plaintiffs as follows :

" ' Gentlemen :—On the 14th we shipped a folder to you from Kansas City and we herewith enclose B. L. for same. Trusting it will reach you promptly.'

" On December 22, 1889, plaintiffs telegraphed defendant as follows :

" ' We elect to rescind contract. Press at your disposal. Return money paid, notes and cost of insurance.'

" After the sale all negotiations between the parties were conducted by letters and telegrams, and the foregoing letters and telegrams constitute all the letters and telegrams mentioned in the evidence as passing between the parties, except the letter of November 26, 1889, from the plaintiffs to defendant, referred to in defendant's letter to the plaintiffs of December 10, 1889. This letter of November 26, 1889, was not introduced in evidence nor was its contents testified to.

" It is contended by the plaintiffs that it is shown by the evidence that the contract for the purchase of the press and the folder was an entire contract, and that plaintiffs had the right to rescind the contract upon the failure of defendant to deliver the folder in accordance with the terms of the contract.

" I think the contract was an entire contract. The purchase price of the articles purchased was a gross sum. It cannot be held to be a severable contract for the reason that the contract would then be incomplete in that no price is fixed upon the several articles included in the sale, and the court would have to fix such price, which it is not authorized to do in cases where the gross price is fixed by the express contract of the parties.

" If the consideration to be paid is single and entire, the contract must be held to be entire, although the subject of the contract may consist of several distinct and wholly independent items." 2 Parsons on Contracts, pp. 519, 520.

" It is further contended by plaintiffs that it is shown by the evidence that there was an absolute refusal by the defendant to comply with the terms of the contract in the delivery of the folder, and this contention is based upon the following correspondence by telegraph. From plaintiffs to defendant, December 5th : ' When will you ship the folder? Answer immediately.' To which defendant replied December 6th : ' Dexter cannot make folder hand-feed. Shall we send you a Forsaith at $150 less ? '

" From plaintiffs to defendant December 10th : ' Wire me if you are to comply with contract. Damage by the de-

lay.   Give discount keeping folder.'   To which defendant replied December 11th: 'Have tried without success to buy secondhand folder.   Advise your taking the Forsaith.   Will give you as much satisfaction as the Dexter.'

"I cannot say that this correspondence shows a direct refusal by the defendant to furnish the folder, but it does show that defendant acknowledged its inability to comply with the terms of its contract, and it fails to show that defendant intended to make any further effort to furnish the folder.

"It is contended by the defendant that time was not of the essence of this contract, and that, whatever may have been the failure of defendant, as to time of the delivery, before the receipt of plaintiff's telegram of December 10th, that telegram showed a willingness on the part of the plaintiffs to receive the folder, and therefore operated as an extension of time to defendant to furnish and deliver it.

"I think it does appear from the telegram that plaintiffs were willing at that time to receive the folder, but there is nothing in defendant's telegram in reply showing that defendant intended or desired to treat plaintiffs' dispatch as an extension of time.   The defendant's telegrams of the 5th and 10th of December, when considered together, clearly indicated that defendant could not furnish the folder contracted for, and plaintiffs were authorized to treat the defendant's telegrams as a declaration by defendant that it could not perform the contract according to its terms.

"It is further contended by defendant that plaintiffs having received the press and used it, and having made and delivered the notes and the mortgage to secure payment of the same, they could not rescind the contract, but must rely upon their right to an action for damages for any breach of the contract in a failure to perform the same by the defendant.

"This condition presents the question whether the plaintiffs, by so receiving the press and making the notes and mortgage, waived their right to rescind the contract upon a failure by the defendant to furnish the folder, and this ques-

tion must be determined by the intention of the parties as the same is disclosed by their acts. These acts of the plaintiffs, simply as part performance of the contract, are insufficient to constitute a waiver unless done with the intention to have them operate as a waiver. Making the $500 cash payment was a part performance of the contract, but no one would contend that such part performance would operate as a waiver of plaintiffs' right to rescind upon a failure by defendant to perform.

" An examination of the evidence fails to disclose any fact going to show an intention on the part of the plaintiffs to waive any rights.

" The correspondence between the parties shows conclusively that plaintiffs were at all times insisting upon and asserting their rights.

" The use of the press by plaintiffs, after its delivery, cannot be taken as an absolute waiver of their right to rescind the contract upon a failure of the defendant to furnish the folder. Defendant set up the press and set it to work as a part performance of the contract by it. If the defendant cannot be placed in the same condition as before the delivering of the press, it is not the fault of the plaintiffs.

" It is further contended by defendant, that, at the time plaintiffs notified defendant of their intention to rescind the contract, it had been fully performed.

" I do not think the evidence sustains the contention. Plaintiffs' telegrams, of the 5th and 10th of December, show a great anxiety on the part of the plaintiffs on account of the failure of defendant to furnish the folder, and also show a willingness to receive it. Plaintiffs' telegram of the 5th, inquiring if defendant will ship the folder, also requested an immediate answer. The answer of defendant on the 6th did not give plaintiffs any assurance that defendant would ship the folder.

" Plaintiffs' telegram of the 10th requested defendant to inform plaintiffs, by telegraph, if defendant was going to comply with its contract; and defendant answered, by

telegram on the 11th, but gave plaintiffs no assurance that defendant intended to comply with the contract, but sent such a telegram as must have induced plaintiffs to believe that defendant could not comply with the contract.

" On the 18th plaintiffs wrote to defendant clearly informing it of their claimed right to rescind the contract, and on the 19th defendant wrote to plaintiffs that it had shipped a folder to plaintiffs from Kansas City on the 14th, the date of the shipment being one day later than defendant's letter to plaintiffs advising them that it had tried without success to get the folder, and advising plaintiffs to take another make of folder.

" In view of the fact that plaintiffs, in their last telegram to defendant, before the shipment of the folder, requested defendant to inform them by telegram if defendant could furnish the folder, it seems strange that defendant should not only neglect to inform plaintiffs by telegram of the shipment on the day of the shipment, but neglected to write to plaintiffs that the shipment had been made until five days after the shipment. This letter advising plaintiffs of the shipment of the folder was received at the post office in Denver on Saturday, December 21st, at 4 P. M., and was received by plaintiffs Monday, December 23d, at 11 A. M. On December 22d plaintiffs sent a night message to the defendant notifying it that plaintiffs had elected to rescind the contract. So that the plaintiffs had elected to rescind, and had sent a telegram to defendant notifying it of such fact, before plaintiffs had notice of the shipment of the folder.

" Defendant urges in argument that the notice to defendant that plaintiffs had elected to rescind was not sent until after the reception of defendant's letter notifying plaintiffs of the shipment, and this proposition is based on the fact that the letter was received at the Denver post office on the 21st and plaintiffs' telegram was not received by defendant until the 23d, but these facts cannot overcome the positive testimony of the plaintiff, Goodrich, that defendant's letter was received by him from the letter carrier on the 23d and

the evidence of the telegram sent by plaintiffs, which shows upon its face that it was sent on the 22d.

" It was urged on the argument that the court had no jurisdiction of the case, by reason of there having been no proper service of the summons.

" This question was presented to Judge Decker, on a motion to set aside the service, by counsel for defendant, specially appearing for that purpose. The motion was denied by Judge Decker and thereafter defendant appeared and plead to the merits by answer.

" Under the rule adopted by the court the ruling of Judge Decker upon the motion would not be reviewed in the same case ; but, under the facts, there is no question of jurisdiction, the defendant having voluntarily subjected itself to the jurisdiction of the court by a general appearance to the action.

" The court finds for the plaintiffs that they are entitled to the relief prayed for."

Mr. F. A. WILLIAMS, for appellant.

Messrs. RIDDELL, STARKWEATHER & DIXON, for appellees.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The foregoing opinion of the learned judge who presided at the trial in the district court fully and fairly disposes of all the questions of law or fact in this case, and we do not deem it necessary to do more than briefly answer the objections to the opinion urged in this court, and call attention to a few leading cases in support of the legal conclusions reached by the trial court.

It is said that the right of rescission never existed and that consequently the discussion about the waiver of the right is out of place. The contract of sale and chattel mortgage were executed cotemporaneously and should be construed to-

gether.   The contract for the press and folder was entire and indivisible ; the price fixed is a gross sum for the two articles, the press to be delivered immediately and the folder within two weeks.   The evidence tends to show that the failure to obtain the folder rendered the press practically valueless for many of the purposes for which it was purchased, and leaves little doubt that had such failure been anticipated, appellees would not have made the contract of purchase.

The folder was not delivered within the time specified and appellees were practically forced to suspend business on account of this breach of the contract.   They had a right to assume from the communications received from appellant that it was unable to comply with the contract with reference to the folder.   Under these circumstances appellees had an undoubted right to rescind the contract.   *Norrington v. Wright et al.*, 115 U. S. 188 ; *Husted v. Craig*, 36 N. Y. 221 ; *Norris v. Harris*, 15 Cal. 226 ; *Robinson v. Brooks*, 40 Fed. Rep. 525 ; *Bell v. Hoffman*, 92 N. C. 273.

It is urged that as the press had been put in use by appellees the appellant could not be placed in *statu quo* and hence the former could not rescind.   It is undoubtedly true that where one of the parties to a contract seeks to rescind, he must place the other in *statu quo*.   He will not be allowed to repudiate a contract and retain a benefit derived therefrom.

In this case, however, it was in contemplation of the parties that the press should be used pending the delivery of the folder.   The evidence shows that, in fact, it was used only to a very limited extent ; that appellees had little or no benefit from such use, and that the press was returned in as good condition as when received.   It is true that the witnesses testified that it would not sell so well as an unused press, but the rule requiring the seller to be placed in *statu quo* has never, we think, been extended so far as to entitle the party in fault to be saved from all loss.

In *Norrington v. Wright, supra,* the contract was for the shipment of five thousand tons of iron rails from an European port or ports, at the rate of one thousand tons per month,

beginning with February, 1880. The purchasers in this case were allowed to rescind the contract on account of a failure to ship one thousand tons in each of the months of February and March, although the purchasers had received four hundred tons of the February shipment and eight hundred and eighty-five tons of the March shipment, before notice that the balance for these months had not been shipped. The fact that the vendors had incurred great expense in the part performance of the contract was considered no objection to a rescission on account of their failure to fully perform.

In *Husted v. Craig, supra*, under the contract plaintiff was to furnish oilcloths and carpets, and to carpet defendant's house. He did a part of it in an unskillful and unworkmanlike manner, and the defendant was allowed to avoid the contract and return the goods, although the carpets had been cut to fit the rooms and put down.

The contract in *Robinson v. Brooks, supra*, was for the delivery of a threshing machine "at once or as soon as possible." The machine at the time was about twenty-eight miles from its destination, and the court held that a delay of two weeks in the shipment of the machine was an unreasonable delay, and that defendants were entitled to rescind the contract by reason thereof. In this case the machine was shipped and upon the failure of the defendant to receive the same it was sold by the railroad company for freight charges; nevertheless the defendant was allowed to rescind the contract.

The district court properly held that the defendant by answering and filing a counterclaim thereby waived all defects in the service of summons. *The N. Y. & Brooklyn M. Co. v. Gill*, 7 Colo. 100; *Colorado Cent. R. Co. v. Caldwell*, 11 Colo. 545.

The judgment is affirmed.

*Affirmed.*