LOUIS F. DAHLER, DEFENDANT IN ERROR, v. J. L. MEISTRELL, PLAINTIFF IN ERROR.

Kansas City Court of Appeals. December 2, 1929.

*Embry & Embry* for defendant in error.

*Roy D. Martin* and *Pendleton & Martin* for plaintiff in error.

ARNOLD, J.—This is an action for money had and received. Plaintiff in error was defendant and defendant in error was plaintiff in the trial court, and we will so refer to them here.

When this case was before us at the October, 1928, term of this court, the following opinion, written by Commissioner FRANK, was adopted as the opinion of the court:

"The petition alleges that defendant in August, 1923, received from the plaintiff the sum of $6,187.85 to and for the use of plaintiff; that in August, 1926, prior to the commencement of said action, plaintiff demanded payment thereof from defendant, but defendant refused to pay said amount or any part thereof. The answer was a general denial. A trial before a jury resulted in a verdict and judgment for plaintiff, and defendant appealed.

Plaintiff's evidence tended to show the following state of facts.

In August, 1923, plaintiff owned a farm of 125 acres in Moniteau County and his father-in-law, Henry Knorp, Sr., owned a farm of 160 acres in Cooper County, Missouri. Plaintiff's father-in-law was indebted to defendant, Meistrell, in the sum of $6,187.85. This indebtedness was secured by a deed of trust on the father-in-law's farm, and a chattel mortgage on certain personal property which he owned. Knorp sold a part of the personal property covered by the chattel mortgage. Defendant, Meistrell, was pressing the collection of this indebtedness, and in August, 1923, he, Henry Knorp, Sr., plaintiff's father-in-law, Mrs. Henry Knorp, Sr., his mother-in-law and Henry Knorp, Jr., his brother-in-law, all went to see plaintiff, for the purpose of inducing him to help father-in-law out of his financial troubles, and told him that his father-in-law had been selling property on which defendant held a mortgage, and was in danger of prosecution. Defendant told plaintiff that his father-in-law needed $6,187.85 to keep his farm from being sold and to keep him out of trouble. Plaintiff told them that he could not assist his father-in-law because he did not have the money with which to do it. Defendant then told plaintiff that it could be arranged without money, by plaintiff giving defendant a mortgage on his (plaintiff's) farm for the amount which his father-in-law owed defendant. Plaintiff told defendant that he did not want to give a mortgage on his farm. Defendant then told him that it would be only lending his credit, because they would secure him by giving him a second mortgage on his father-in-law's farm of 125 acres, and on his brother-in-law's river bottom farm. Defendant represented to plaintiff that the father-in-law's farm would only be incumbered between $12,000 and $13,000, including the second mortgage of $6,187.85 which he was proposing to give him, when in fact the incumbrance, including the proposed mortgage would be over $18,000. Plaintiff requested time until six o'clock the next morning in order to go to Boonville and examine the records, before giving a mortgage on his farm. Defendant told him that would be too late; that his father-in-law had been selling mortgaged property and he intended to have him arrested the next morning; that it was not

necessary for him to examine the records because he had already told him the truth about what the record showed.

Plaintiff, relying on the representations made by defendant and believing them to be true, executed a mortgage on his own farm for $6,187.85, and delivered the proceeds thereof in payment of what his father-in-law owed defendant.

After plaintiff had given the mortgage for $6,187.85, Meistrell called up young Henry Knorp, plaintiff's brother-in-law, and had him to turn over some bank stock in the Bank of Woolridge to plaintiff for the purpose of making him safe. Plaintiff also received in this deal a $5750 note, secured by a second deed of trust on the farm of Henry Knorp, Jr., and a third deed of trust on the father-in-law's farm. Later, in July or August of 1925, the second deed of trust on the father-in-law's farm was foreclosed and there was nothing left to be applied upon the third mortgage note which was held by plaintiff and which was secured by a third deed of trust (which he had supposed was a second deed of trust). There was evidence that the Bank of Woolridge was insolvent. The farm of Henry Knorp, Jr., was foreclosed under the first deed of trust in April, 1925, and brought less than the first deed of trust.

At the time this suit was instituted, the plaintiff had brought two suits against Henry Knorp, Jr., in the circuit court of Moniteau county, and had gotten judgment in one of the suits. The other was still pending at the time of the trial of the instant suit. The suit which was still pending was upon the $5750 note secured by second deed of trust on the brother-in-law's farm, which note had been transferred to plaintiff as security. At the time the plaintiff executed a deed of trust upon his own land and at the time he received a third deed of trust from his father-in-law, he also took over from the defendant a chattel mortgage, which Knorp had executed to defendant. This chattel mortgage was upon wheat, corn, crops on the farm, live stock and machinery. However, by an agreement between the parties, the chattel mortgage was cancelled of record so that the father-in-law law could go ahead with his farm operations. The amount of this chattel mortgage was $1800.

There was evidence to the effect that the value of the two farms, upon which plaintiff had taken a mortgage to secure himself from loss by reason of the fact that he had executed a mortgage to raise the money he paid defendant, was less than the amount of incumbrance upon said farms, which were prior to the deeds of trust taken by plaintiff. The plaintiff testified that he learned of the condition of the record and that he also learned that his security was worthless in July or August, 1924, when the second farm was foreclosed under a second deed of trust prior to his own deed of trust.

There was evidence that Henry Knorp, Sr., and Henry Knorp, Jr., the makers of the notes which plaintiff received, had no property

of any kind. The evidence of misrepresentations was disputed by defendant, but this is not an open question after verdict in favor of plaintiff.

Defendant testified that Bank of Woolridge stock was worth $200 per share in 1923; that he paid $125 per share for some of this stock in 1925.

Plaintiff did not tender back the notes, bank stock or other property he received, before he brought this suit. During the progress of trial, plaintiff made the following offer to return this property:

"Now comes the plaintiff, in the above entitled cause into open court, and hereby offers to transfer and assign, without recourse, to the defendant, any and all notes and two shares of stock of the Bank of Woolridge, received by the plaintiff in the transaction in controversy in this action, and any judgment taken on any of said notes."

The verdict was for the full amount sued for. Pending a hearing on the motion for new trial, the court required the plaintiff to enter a remittitur of $1950 as a condition to overruling the motion for new trial. The order made in that behalf is as follows:

"And the court, having seen and heard and being in the premises fully advised, overrules said motion for new trial upon condition that plaintiff, within ten days from this date, enter a remittitur in this cause in the sum of nineteen hundred and fifty dollars, the same being the amount of the chattel mortgage mentioned in evidence (eighteen hundred dollars) in this cause, and the value of the bank stock in the Bank of Woolridge mentioned in evidence in this cause (one hundred fifty dollars), otherwise said motion for new trial shall be sustained."

Defendant's first contention is that plaintiff is not entitled to recover in this action, because he did not put defendant *in statu quo* by tendering back what he received under the contract before this suit was instituted.

The rule applicable to the contention here made is well stated in 41 C. J., p. 56, section 48, as follows:

"The general rule is that, in order to enable a party who is entitled to rescind the contract on account of failure of consideration or non-performance of the other party, *to bring an action for the money which he paid on account of it,* he must restore or tender what he has received in part performance, unless the right is waived. The action proceeds on the ground of a disaffirmance of the contract in such a case and a restitution of the thing given in exchange, and the other party to the contract must be placed in as good a position as he was before the contract was entered into; but where there is nothing to be done by plaintiff to place defendant *in statu quo, the action for money had and received* is in itself a rescission." (Italics ours.)

Plaintiff cites the case of Sidebottom v. Sidebottom, 255 S. W. 353, 356, in support of his contention that no tender back is necessary in an action for money had and received. An examination of this case shows that it not only does not support plaintiff's contention, but on the contrary supports the rule as announced in 41 C. J., supra. The action in the Sidebottom case was for money had and received. The facts were that defendant did not deliver to plaintiff the thing contracted for and plaintiff brought an action for money had and received to recover what he had paid defendant on the contract. There was no tender back before the suit was instituted. In disposing of the contention that it was necessary for plaintiff to tender back what he had received under the contract, the court said:

"We do not think that tender in this case was necessary. Where a party desires to rescind a contract he must restore or return what has been received in part performance, but where the thing delivered as part performance is not what was contracted for, but a different thing, he may bring an action for the money he paid on the contract without redelivery or tender of what has been delivered to him."

This case holds that where a party receives the thing contracted for, a tender back is a prerequisite to rescission of the contract, but when the thing received was not the thing contracted for tender back of the thing received is not necessary.

In the case at bar, no contention is made that plaintiff did not receive what defendant contracted to give him. His complaint in this regard is that what he did receive under the contract turned out to be worthless. It being undisputed that plaintiff received what he contracted for, it was incumbent on him to tender back the property he received under the contract, before bringing this suit, unless such property was worthless. If it had no value, then no tender back was necessary, because the law does not require the doing of a useless thing.

In consideration of plaintiff paying his father-in-law's debt of $6187.85 to defendant, he received a third deed of trust on his father-in-law's farm; a note for $5750 executed by Henry Knorp, Jr., secured by a second deed of trust on a farm of 160 acres, two shares of stock in the Bank of Woolridge, and procured the release of a chattel mortgage of $1800 on his father-in-law's personal property.

Plaintiff's evidence is to the effect that the Bank of Woolridge was insolvent; that neither Henry Knorp, Jr., the maker of the $5750 note, or Henry Knorp, Sr., the maker of the third deed of trust, had any property. On this showing plaintiff contends that the bank stock and the $5750 were worthless and for that reason no tender back was necessary.

We do not agree with this contention. As to the bank stock, defendant testified that this stock was worth $200 per share at the

time the transactions in question were had. The conflicting evidence as to the value of the stock, presented a disputed question of fact for the jury to determine under proper instructions. [Bailey v. Gilman, 99 Mo. App. 571, 576.] Neither do we agree with the contention that insolvency of the maker of the $5750 note justifies the assumption that the note was worthless. This court had occasion to determine a kindred question in Noel v. Hughes, 152 Mo. App. 196, whereat the court said:

"Counsel for plaintiff appear to think that an offer to return the note and deed of trust would have been but an idle and useless ceremony since they were valueless on account of the insolvency of the maker of the note and the fact that the land had been sold under a prior trust deed. We do not agree with this view. A note of an insolvent maker cannot be held wholly valueless. We said in the recent case of Implement Co. v. Ellis, 125 Mo. App. l. c. 698: 'The rule announced in this court in an opinion by Judge SMITH in which it was stated that the fact that the notes were upon insolvent parties did not alter the rule. For, as stated by him, "the insolvent of today may be the man of fortune tomorrow." ' " [Chemical Co. v. Nichols, 66 Mo. App. 678.]

The bank stock and notes not having been shown to be worthless, plaintiff could not maintain an action at law to recover the money he paid defendant on the contract, without first effecting a rescission of such contract by tendering back what he had received thereunder.

In determining whether or not it was necessary for plaintiff to restore the *status quo*, by tendering back what he received under the contract, we must keep in mind the distinction between an action at law and one in equity. If the case be one in equity praying a rescission, it would be sufficient for plaintiff to plead a willingness to restore the *status quo,* and tender into court what was received under the contract. But where, as here, the only relief sought is a money judgment for the full amount plaintiff paid on the contract, it is an action at law, bottomed on the fact that the rescission has been already made, and presupposes that the rescission was affected by a tender back before the suit was instituted. There is no foundation for an action at law before rescission, because such action is based on rescission. [Implement Co. v. Ellis, 125 Mo. App. 692, 699; Sturgis v. Whisler, 145 Mo. App. 148, 155; Althoff v. Transit Co., 204 Mo. 166.] Actions in equity seek to have the court decree a rescission, while actions at law seek a recovery on the ground that the plaintiff has already rescinded. It results that plaintiff's action, being one at law, he cannot maintain it, without showing that, before the suit was instituted, he tendered back what he received under the contract.

It is next contended that the court erred in trying issues of fact and adjusting equities after the verdict was returned and without

the aid of a jury. This contention is based on the court's action in requiring the plaintiff to remit the sum of $1950, being the amount of the chattel mortgage shown in evidence ($1800) and the value of the two shares of bank stock ($150).

Plaintiff's evidence as to the value of the bank stock was that the bank was insolvent and the stock was worthless. Defendant testified that this stock was worth $200 per share at the time the transactions in question were had. The conflicting evidence as to the value of this stock presented a disputed question of fact for the jury to determine under proper instructions. [Daily v. The Gillman Bank, 99 Mo. App. 571, 575, 576.]

It was error for the court to determine this disputed question of fact. It cannot be said that this error was harmless. Plaintiff received two shares of this stock. There was evidence that it was worth $200 per share and defendant was entitled to have the jury pass upon the conflicting evidence as to value and determine whether or not the stock was worth that amount. If the jury so found, then in event of a *remittitur*, defendant would have been entitled to have the verdict of the jury reduced $400 instead of $150 on account of the bank stock.

It is contended that plaintiff discovered the alleged fraud in August, 1924, and with this knowledge he thereafter brought suits upon the notes he received under the contract which he now seeks to rescind, that such acts amounted to an affirmance of the contract, and precluded plaintiff from thereafter disaffirming it.

Plaintiff admits that he discovered the alleged fraud in August, 1924, but it is not shown when he insistuted suits on the notes. In this situation we are unable to determine whether such suits were brought before or after the discovery of the alleged fraud. We cannot say that plaintiff's act in bringing suits to collect the notes which he received from defendant under the alleged fraudulent contract, amounted to an affirmance of the contract, in the absence of a showing that plaintiff had knowledge of the alleged fraudulent acts of defendant, at the time he brought suit on the notes.

This being an action at law, it was necessary, for reasons heretofore stated, for plaintiff to show that he rescinded the contract, within a reasonable time after he discovered the fraud, and before he brought this suit, by tendering back what he received under the contract. No such showing was made. For this and other reasons heretofore mentioned, the judgment should be reversed and the cause remanded. It is so ordered.''

## On Rehearing.

In his motion for rehearing, defendant in error reiterates and reargues matters contained in his original brief, at the same time asserting some additional points and arguments not contained therein. One of these points is that in our main opinion in the present case,

we say that after plaintiff had given the mortgage on his farm for $6187.85, Meistrell called up young Henry Knorp and had him turn over the bank stock in question. Defendant in error now argues that, therefore, this bank stock did not enter into the transaction and was no part of the consideration for the same, and this court erred in holding that it had to be tendered back; that the bank stock was not contracted for.

It is clear from this situation that the bank stock was a part of the general transaction, that it was accepted by defendant in error and held by him. We think therefore he is in no position to urge this point. There was conflicting testimony offered by the parties as to the value of this stock, thus presenting a question for the jury to solve. This being a suit at law the trial court, after verdict, was without right to determine the question of value and required a *remittitur*.

In the motion for rehearing defendant in error again insists that no tender was necessary prior to the institution of the suit, because the mortgages, notes, etc., received by him were worthless. The main opinion fully covers this point and we think correctly, against the contention of defendant in error. The main opinion states clearly the distinction between the rule applicable to cases at law and cases in equity. Defendant in error leans heavily on the cases of Winter v. Cable Co., 160 Mo. 159, 61 S. W. 606, and Arnold v. Bank, 285 S. W. 161, 163. The Winter case was one in equity and has no application to the case at bar which is a law case and comes under a different rule. As to the Arnold case we merely held that tender of the notes received under the facts in that case was not a condition precedent to bringing a suit *in assumpsit* for money had and received. To say there is nothing in the nature of a given action for money had and received that requires a tender as a condition precedent is a statement too general to be controlling here. Such an action covers too many different kinds of transactions to be limited to a ruling in any certain case. In this case a tender back was a prerequisite because the evidence shows plaintiff was seeking a return of his money which he paid under a contract which he claims he had the right to rescind, because the contract was obtained through fraud and duress. We think, however, plaintiff should have tendered back everything he received except the chattel mortgage; but as it was no longer in existence, its return was not possible or necessary. [Green v. Insurance Co., 159 Mo. App. 277, 140 S. W. 325; Paquin v. Milliken, 163 Mo. 79, 107, 63 S. W. 1092.]

In this view of the case we hold the judgment should be reversed and it is so ordered. *Bland, J.,* concurs; *Trimble, P. J.,* absent.