16195

STANLEY v. BEECHAM

(52 S. E. (2d) 413)

*Messrs. Julian L. Johnson and Isadore S. Bernstein,* of Columbia, *for Appellant,* cite:

*Mr. C. T. Graydon,* of Columbia, *for Respondent,* 

March 15, 1949.

OXNER, Justice.

This is an action by the buyer to rescind two contracts for the sale of certain mattresses and to recover the purchase price. The trial resulted in a verdict of the jury in favor of the seller and from the judgment entered thereon, the buyer has appealed. It is claimed that the Court erred in refusing a motion for a directed verdict made by the buyer at the close of all the evidence, and there are also certain exceptions relating to the admission of evidence and the charge.

Appellant is engaged in the business of supplying equipment and various materials used in hospitals and maintains a branch office at Columbia, South Carolina. Respondent manufactures mattresses at a plant located in Lexington County, near the City of Columbia. Respondent agreed to manufacture according to certain specifications and sell to appellant 63 mattresses at $9.50, each, to be delivered to the Spartanburg General Hospital, and 115 mattresses at $10-.00, each, to be delivered to the Columbia Hospital. Respondent had no dealings with these hospitals. The sales to them were made by appellant.

The 63 mattresses were delivered to the Spartanburg General Hospital in December, 1941, and the purchase price paid about the time of delivery. They were stored because the building in which they were to be used had not been completed and were not placed in use by the hospital until November, 1942. A month or two later the superintendent of the hospital notified appellant that these mattresses were unsatisfactory. The testimony of appellant's Columbia Manager as to what then transpired is as follows:

"A. I immediately called Mrs. Beecham of the Best Mattress Co. on the telephone and discussed the situation with her.

"Q. What did you tell her when you called her? A. That the mattresses we had shipped to Spartanburg General Hospital had gone to pieces and the hospital had refused to use them further and was returning them to us for full credit.

"Q. Did Mrs. Beecham make a statement to you at any time? A. At that time she could not understand why they were returned. She wanted to know why. I described what was wrong with the mattresses and she in turn agreed to make those mattresses good but the hospital refused to accept any more of her mattresses."

Appellant's testimony was to the effect that shortly thereafter twenty or thirty of these mattresses were shipped from the Spartanburg General Hospital to respondent's plant, but

after respondent failed to refund the purchase price for those returned, the other mattresses were shipped to Columbia and stored at appellant's place of business where from time to time, between January, 1945, and April 30, 1946, they were picked up by respondent who paid $252.00 on account of the purchase price but has failed to pay the balance.

Of the original order for 115 mattresses to be delivered to the Columbia Hospital, 89 were delivered on August 31, 1942, and the purchase price paid on September 10, 1942. After being used for several months, the Superintendent of the Columbia Hospital notified appellant in February, 1943, that the mattresses were defective. The Columbia manager of appellant immediately reported the complaint to respondent and asked her to withhold any further shipment. He testified that shortly thereafter respondent agreed "to make the mattresses good" and an arrangement was made whereby she was to rebuild seven and if this work was satisfactory, she was then to be allowed to "make over the entire 89 and continue with the order"; that accordingly the seven mattresses were rebuilt and redelivered to the hospital but proved to be unsatisfactory; that when this fact was reportel to respondent, she replied, "I wash my hands of the entire deal, I cannot satisfy you", and refused to deliver any more of the mattresses. On April 12. 1944, respondent wrote appellant that if possible she would try to take up as many as fifteen mattresses a month. According to appellant's testimony, thereafter between January 9, 1945, and April 30, 1946, respondent called for and took possession of all 89 mattresses but has failed to refund the purchase price.

According to respondent's testimony, all of the mattresses were made according to specifications, were examined by appellant's local manager during the process of manufacture, and no complaint was made until more than a year had elapsed after delivery. There was also testimony to the effect that the springs called for by the specifications were unsuita-

ble for hospital use and that a different, more expensive type should have been specified.

Respondent testified that all the mattresses shipped to the Spartanburg General Hospital were returned to her at one time by motor express. She described the circumstances under which they were received as follows:

"Q. And you got the mattresses back, too? A. Not with my consent. I didn't want those mattresses back and the young man called and told me about the mattresses. I think that is the very young man that testified just now. I said 'I am not going to take those mattresses back, it isn't just for me to take them back.' He said he didn't know anything about it, but he knew in his heart it was wrong to ask me to take the mattresses back.

"Q. You knew you took them back? A. They were sent to me and dumped on me and I had to take them.

"Q. You have them? A. Yes, I have them.

"Q. You knew the Stanley Supply Company was looking to you to account to them? A. I had accounted to them. They bought them and I delivered them and they paid me and I think the transaction was closed."

Respondent testified as follows with reference to the mattresses delivered to the Columbia Hospital:

"Q. Now, isn't it true that after you were notified of the defective condition of the mattresses at the Columbia Hospital you agreed to replace those mattresses? A. I told Mr. Opper (appellant's Columbia manager) at first I was not going to replace those mattresses with new mattresses, that I would take mattresses and recondition them if he would pay for the ticking and things that had been soiled in the use of the mattresses. I told Mr. Opper if they would agree to do that I would pick those mattresses and try to recondition them."

At another point in her testimony, respondent says she told Mr. Opper. "I will take them and repair them and do my

best to satisfy them if I could, but I am not going to take those mattresses back", to which he replied that the mattresses were a part of a government contract and if she failed to take them back, she would be placed in jail. She said that she was induced to sign the letter heretofore mentioned under this threat of imprisonment. According to her testimony, the mattresses when returned were filthy, dirty, mildewed and worthless except for the salvage value of the springs. She denied paying for any of the mattresses picked up at appellant's place of business. She admitted paying appellant approximately $260.00 but said that she did so because she felt that she should pay for the 26 mattresses which had never been delivered to the Columbia Hospital.

We shall first determine whether the Court erred in refusing appellant's motion for a directed verdict upon the ground that the evidence conclusively showed that both contracts were rescinded by mutual consent. Respondent's testimony certainly does not indicate that she ever agreed to an abrogation or termination of the contract. Appellant's contention is based primarily on implied consent to rescission from the acts of the parties. It is said that the return of the mattresses to respondent constituted an offer of rescission and the acceptance and retention of them by her was an acceptance of the offer, and that by retaining the mattresses, respondent "has waived any right to contend that there was no rescission." But we cannot say that this is the only reasonable inference warranted by the testimony. The questions as to whether the conduct of the parties was such as to show a mutual consent to rescission and whether respondent acquiesced in appellant's repudiation of the contracts were properly submitted to the jury. It is true that after the mattresses were returned to respondent, she used some of the springs which were worth about $1.35, each. This was a circumstance to be considered by the jury in determining the question of mutual rescission. But we do not think it can be said as a matter of law that this was such an

assumption of ownership as to amount to a ratification of appellant's effort to rescind. It is to be kept in mind that these mattresses were used in the hospitals for several months, later stored and most of them were not brought to respondent's place of business until three or four years after they were sold. According to respondent's testimony, they were then entirely worthless for any purpose except the salvage value of the springs. It is difficult to perceive how under these circumstances the status quo could have been restored. In this connection, see *Ebner v. Haverty Furniture Co.,* 128 S. C. 151, 122 S. E. 578.

The facts here are quite different from those in *Trexler Lumber Co. v. Wilson,* 96 S. C. 176, 80 S. E. 271, upon which appellant principally relies. In that case the seller expressly agreed to accept the property sold and directed that it be returned.

It is contended that in any event respondent acquiesced in the rescission of so much of the contract as related to the 26 mattresses that were never delivered. Respondent testified that appellant stopped further deliveries and that she was ready at all times to perform her part of the contract. It would have been useless for her to have made a tender of the 26 mattresses after appellant stated that they would not be accepted. The position of respondent throughout was that she had fulfilled the contract but notwithstanding this fact, she was willing to make any reasonable effort to satisfy the hospital authorities.

The next question is whether the Court erred in allowing respondent to testify that the payment of approximately $260.00 was made to cover the cost of the 26 mattresses which were not delivered to the Columbia Hospital. Appellant objected to this testimony on the ground that payment, an affirmative defense, was not pleaded by respondent. Appellant alleged in his complaint that respondent owed the full amount of the purchase price for the mattresses shipped to Spartanburg, less the sum of $257.00 "which was

paid to the plaintiff by various installments between November, 1943, and May, 1944." Appellant's testimony tended to show that this amount was paid from time to time as the Spartanburg mattresses were picked up by respondent. The testimony of respondent was to the effect that all the Spartanburg mattresses were returned in one shipment and the payment mentioned was made to cover the purchase price of the 26 mattresses which were not delivered to the Columbia Hospital. The fact that approximately $260.00 was paid is conceded. Only the purpose for which it was paid is in dispute. The testimony was competent to show that the money was not paid for the purpose alleged in the complaint and claimed in appellant's testimony. Neither in the answer nor in the testimony is there any recognition of liability by respondent. She did not claim payment on an existing obligation. Her position was that she was under no obligation to refund any portion of the purchase price, but voluntarily refunded the cost of the 26 mattresses not delivered.

The remaining exceptions relate to the charge. Appellant alleged in his complaint that the mattresses delivered to the Columbia Hospital "did not meet the specifications as set forth in purchase order No. A-10535 and were faulty and defective", and that those delivered to the Spartanburg Hospital "were faulty and defective and not manufactured according to the specifications." In stating the issues, the trial Judge said that plaintiff was seeking to rescind the contract and recover the purchase price on the ground that "the defendant did not fulfill or live up to the specifications as shown in that contract for the manufacture of those mattresses." Later he charged that in order for the plaintiff to recover, he must prove by the preponderance of the evidence "that some one or more of the specifications as set forth in that contract were not lived up to." The complaint is made that plaintiff alleged in his complaint both that the mattresses were not made according to specifications and that they "were faulty and defective". It is said that even if the mattresses met the specifications, they could have been

faulty and defective on account of inferior workmanship and that this feature was ignored in the charge.

It is apparent that the omission complained of is in the nature of a misstatement of the issues which should have been called to the attention of the Court. This was not done and it is now too late to complain. *Werts v. Greenwood County,* 205 S. C. 258, 31 S. E. (2d), 451; *South Carolina Power Co. v. Baker et al.,* 212 S. C. 358, 46 S. E. (2d) 278. Apart from this, however, from a consideration of the entire charge, which included a clear statement of the law applicable to appellant's theory of rescission, it does not appear that the error complained of was prejudicial.

Judgment affirmed.

FISHBURNE, STUKES, TAYLOR, J.J., and STEVE C. GRIFFITH, A.A.J., concur.