**Nora KESINGER, Plaintiff-Respondent,**

v.

**Joe BURTRUM, d/b/a Burtrum Brothers Motor Company, Defendant-Appellant.**

No. 7458.

Springfield Court of Appeals.

Missouri.

Aug. 17, 1956.

· Coyne & Patten, Joplin, for defendant-appellant.

Dalton DeShazer, Joplin, for plaintiff-respondent.

STONE, Judge.

■ In her petition filed herein on September 17, 1953, plaintiff alleged that, on or about February 25, 1951, she had purchased from defendant, a used car dealer at Joplin, Missouri, a 1948 Ford tudor automobile, motor number A2298212, for $1,180; that she had delivered to defendant "as a down payment" a used automobile of the value of $400 and had executed a promissory note for $780, on which $604.08 had been paid; that, although demanded by plaintiff "on numerous occasions," defendant had failed and refused to deliver to plaintiff a certificate of title to the 1948 Ford automobile purchased by her; and that, on or about September 14, 1953, plaintiff had tendered said Ford automobile back to defendant and had "demanded that defendant return to her the amount paid on said purchase price," which defendant refused to do. The prayer of plaintiff's petition was for a money judgment of $1,004.08 and for costs. Defendant's answer was a general denial. The evidence adduced upon trial by the court, a jury having been waived, fully justified and amply supports the findings of the able trial judge that:

"* * * at the time of purchase plaintiff was delivered a certificate of title to the Ford, bearing (motor) No. 2249724. She made application for a new title, was given a receipt by the licensing clerk (at the State License Bureau), and received a car license. The new title was not returned to her, but evidently was sent to defendant who held the mortgage. In the early part of September, 1953, plaintiff endeavored to trade the Ford to Stanley Motors for a new car. An attempt was made to procure the title from defendant. It was not forthcoming. It later developed that the title delivered to plaintiff bore the wrong (motor) number. It should have been No. 2298212, which was the number on the motor. * * * There is no evidence that defendant acted in bad faith in delivering the wrong title, but on the contrary he delivered the same title he had received. The mistake was made by some prior owner or dealer. Plaintiff had the use of the Ford from date of purchase, February 25, 1951, until September 15, 1953, when her husband returned the car to the defendant, shortly after she discovered her title was not good, or for a period of two years, six months and twenty-five days. After that date (about October 7, 1953) defendant procured a corrected title which plaintiff then refused to accept."

After noting that "plaintiff demands the full amount paid by her, to-wit, $604.08 cash and $400 value placed on the 1941 Chevrolet which she traded in," the trial judge expressed the opinion that "under the peculiar circumstances of this case plaintiff should be charged with the use of the Ford car unmolested for a period of over two and one-half years"; and, observing that "certainly the value of the use of the car should at least equal the depreciation," the court entered judgment for plaintiff in the sum of $574.08, arriving at that figure by deducting the unpaid balance of $175.92 on plaintiff's purchase money note, secured by chattel mortgage on the Ford, from the valuation of $750 which *plaintiff* placed on the Ford as of September 14, 1953, when it was returned to defendant.

■ On this appeal by defendant, it would seem to be "of primary importance to determine what sort of action is sought to be maintained." United States Fidelity & Guaranty Co. v. Mississippi Valley Trust Co., Mo.App., 153 S.W.2d 752, 757; Young v. Hall, Mo.App., 280 S.W.2d 679, 681.

**608**

For that purpose, we turn first to plaintiff's petition, because, as under prior codes,[1] "the pleadings continue to be of the greatest utility in defining the issues of a case" tried under our present code,[2] and "(t)he form of the action is determined by the substance of the petition."[3] Even though our courts have on several occasions "loosely stated the prayer is no part of the petition"—a thought "more accurately expressed by saying the relief prayed for is no part of plaintiff's cause of action" [Menke v. Rovin, 352 Mo. 826, 180 S.W.2d 24, 26(2, 3)]—it is clear that, "in determining the cause of action intended to be pleaded under the new code, we may consider the facts pleaded and relief sought." Kemp v. Woods, 363 Mo. 427, 251 S.W.2d 684, 688(4). And, although Section 506.-040[4] provides that "(t)here shall be one form of action to be known as 'civil action,'" all distinctions between actions at law and in equity are not thereby eliminated. Krummenacher v. Western Auto Supply Co., 358 Mo. 757, 217 S.W.2d 473, 475(2). Considering the petition in the instant case with the foregoing in mind, we have no doubt but that plaintiff thereby undertook to state *an action at law* for recovery of the purchase price of the Ford,[5] for which there could have been no foundation unless adequate restitution *theretofore* had been made or tendered,[6] as distinguished from *an action in equity* for a rescission, in which it is sufficient to plead a willingness to make appropriate restitution.[7]

Unless a certificate of title, correctly describing the motor vehicle sold,[8] is assigned and delivered to the buyer, the attempted sale of any motor vehicle registered under the laws of this state is fraudulent and void and no title passes.[9] This is true, not because of any judicial reasoning, but because the absolute and mandatory

1. Conrad v. Diehl, 344 Mo. 811, 129 S.W.2d 870, 872(2); Kleinlein v. Foskin, 321 Mo. 887, 13 S.W.2d 648, 654(4); Christian v. Connecticut Mut. Life Ins. Co., 143 Mo. 460, 45 S.W. 268, 270 (6); Currier v. Lowe, 32 Mo. 203; Morrison v. Painter, Mo.App., 170 S.W.2d 965, 971(14).

2. Gerber v. Schutte Inv. Co., 354 Mo. 1246, 194 S.W.2d 25, 28; Grapette Co. v. Grapette Bottling Co., Mo.App., 286 S.W.2d 34, 38; Dugan v. Trout, Mo.App., 271 S.W.2d 593, 597. Consult also Linders v. Linders, 356 Mo. 852, 204 S.W.2d 229, 230(2); Williams v. City of Illmo, Mo.App., 279 S.W.2d 196, 201; Smith v. Githens, Mo.App., 271 S.W.2d 374, 381 (23).

3. Webster v. Sterling Finance Co., 351 Mo. 754, 173 S.W.2d 928, 931; Hilderbrand v. Anderson, Mo.App., 270 S.W.2d 406, 409(3). See also Williams v. Illinois Cent. R. Co., 360 Mo. 501, 229 S.W.2d 1, 2(3), 20 A.L.R.2d 322; Young v. Hall, Mo.App., 280 S.W.2d 679, 681(2).

4. All statutory references herein are to RSMo 1949, V.A.M.S.

5. Jones v. Norman, Mo.App., 24 S.W.2d 191, 194; Dahler v. Meistrell, 224 Mo. App. 815, 24 S.W.2d 238, 242; Girdner v. Alley, Mo.App., 256 S.W. 832.

6. Witte v. Cooke Tractor Co., Mo.App., 261 S.W.2d 651, 659(12); Dahler v. Meistrell, supra, 24 S.W.2d loc. cit. 241–242(5); Jones v. Norman, supra, 24 S.W. 2d loc. cit. 194(1); Sturgis v. Whisler, 145 Mo.App. 148, 130 S.W. 111, 113.

7. Dahler v. Meistrell, supra, 24 S.W.2d loc. cit. 242; Green v. Security Mut. Life Ins. Co., 159 Mo.App. 277, 140 S.W. 325, 332(10); Kingman-Moore Implement Co. v. Ellis, 125 Mo.App. 692, 699, 103 S.W. 127, 128–129. See also Butler County, Mo. v. Campbell, 353 Mo. 413, 182 S.W.2d 589, 592(8); Githens v. Butler County, 350 Mo. 295, 165 S.W.2d 650, 653; Reliable Life Ins. Co. v. Bell, Mo.App., 246 S.W.2d 371, 376 (5).

8. Craig v. Rueseler Motor Co., Mo.App., 159 S.W.2d 374, 378(2); Robertson v. Snider, Mo.App., 63 S.W.2d 508.

9. Section 301.210(4); State ex rel. Connecticut Fire Ins. Co. of Hartford, Conn. v. Cox, 306 Mo. 537, 268 S.W. 87, 37 A.L.R. 1456; Anderson v. Arnold-Strong Motor Co., 229 Mo.App. 1170, 88 S.W.2d 419, 421(2); Mathes v. Westchester Fire Ins. Co. of New York, Mo.App., 6 S.W.2d 66, 68(2); Weaver v. Lake, Mo. App., 4 S.W.2d 834, 835; Quinn v. Gehlert, Mo.App., 291 S.W. 138.

provisions of Section 301.210(4) plainly so state. Robinson v. Poole, Mo.App., 232 S.W.2d 807, 811. However, since an attempted contract within the statutory prohibition implies no moral turpitude and thus is simply *malum prohibitum* rather than *malum in se* [Boyer v. Garner, Mo.App., 15 S.W.2d 893], it has been recognized in numerous Missouri cases that, so long as the contract of sale remains executory, i. e., before assignment and delivery of a proper certificate of title [Winscott v. Frazier, Mo. App., 236 S.W.2d 382, 383], the buyer may repudiate the contract and may recover what he has paid, provided he acts within a reasonable time and returns, or offers to return, the motor vehicle in substantially as good condition as it was when he received it.[10] Strictly speaking, an action by the buyer of a motor vehicle to recover what he has paid under a *void* contract of sale does not involve rescission or the rules relating thereto, for rescission contemplates a *voidable but existing* contract. Schroeder v. Zykan, Mo.App., 255 S.W.2d 105, 111(8), and cases there cited. However, our appellate courts frequently have referred, interchangeably and indiscriminately, to *rescission* as well as *repudiation* of a *void* contract of sale for a motor vehicle,[11] perhaps by reason of the fact that, to recover the purchase price paid under such void contract, the buyer "must perform the

same acts which in the case of a voidable contract would amount to a rescission." Schroeder v. Zykan, supra, 255 S.W.2d loc. cit. 112.

Of course, the requirement (as stated in many of the cases) that a buyer act within a reasonable time, as a condition precedent to recovery of money paid under a void contract of sale for a motor vehicle, means within a reasonable time after he discovers, *or in the exercise of ordinary care should discover,* the ground for repudiation of the contract;[12] and whether, in any given case, the buyer's action has been timely remains a question of fact so long as fair-minded men reasonably might differ about it.[13] In the instant case, the 1948 Ford tudor purchased by plaintiff from defendant on February 25, 1951, was described *correctly* in the certificate of title excepting *only* as to *motor number,* and plaintiff apparently did not learn of that misdescription until she undertook to trade the Ford about two weeks before she tendered it to defendant. Where, as here, there is no circumstance fairly calculated to arouse suspicion or to excite the zetetic impulse in an ordinarily prudent person, we are unwilling to impose upon the buyer of a motor vehicle the inflexible duty, as a matter of law, of searching out the motor number on the vehicle (in itself,

10. Boyer v. Garner, Mo.App., 15 S.W.2d 893; Perkins v. Bostic, 227 Mo.App. 352, 56 S.W.2d 155; Fowler v. Golden, 240 Mo.App. 627, 212 S.W.2d 93; Cantrell v. Sheppard, Mo.App., 247 S.W.2d 872, 875 (3); Smith v. G. F. C. Corp., Mo.App., 255 S.W.2d 69, 71(3). See also Riss & Co. v. Wallace, 350 Mo. 1208, 1216, 171 S.W.2d 641, 644, 151 A.L.R. 512; Hadley v. Smith, Mo.App., 268 S.W.2d 444, 450.

11. Cantrell v. Sheppard, supra, and Fowler v. Golden, supra, refer to *both repudiation and rescission,* while Pearl v. Interstate Securities Co., 357 Mo. 160, 166, 206 S.W.2d 975, 979, Winscott v. Frazier, Mo.App., 236 S.W.2d 382, 383, and Riss & Co. v. Wallace, 239 Mo.App. 979, 988, 195 S.W.2d 881, 885, refer to *rescission only.*

12. Horigan Supply Co. v. Rau, Mo.App., 221 S.W. 812, 813; Jones v. Norman, Mo.App., 228 S.W. 895, 896; Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 7, Section 4292, p. 155. See also Witte v. Cooke Tractor Co., supra, 261 S.W.2d loc. cit. 656(6); Stone v. Kies, Mo.App., 227 S.W.2d 85, 88(3).

13. Aeolian Co. of Missouri v. Boyd, Mo. App., 65 S.W.2d 111, 113(4); Jones v. Norman, supra, 24 S.W.2d loc. cit. 195 (7); Manley v. Crescent Novelty Mfg. Co., 103 Mo.App. 135, 77 S.W. 489, 490 (3). Consult also Davidson v. Gould, Mo.App., 187 S.W. 591, 593; Emery v. G. H. Boehmer Shoe Co., 167 Mo.App. 703, 151 S.W. 174(2); annotation 72 A.L.R. 726.

an aggravating and perplexing task to one not schooled in such matters) and comparing it with the motor number on the certificate of title to make sure that there is no discrepancy between the two. On the record presented to us, we think that whether plaintiff's discovery of the misdescription as to motor number on the certificate of title and her attempted repudiation of the contract of sale were timely were questions for determination by the trier of the fact, in this instance the court sitting as a jury, and we are not inclined to disagree with the findings inherent in the judgment that plaintiff's action was seasonable. Section 510.310(2); Beckemeier v. Baessler, Mo., 270 S.W.2d 782, 786(3), and cases there cited.

However, as we have noted, the right of the buyer to repudiate a void contract of sale for a motor vehicle and to recover what he has paid therefor is conditioned not only upon action within a reasonable time but also upon return or tender of the vehicle in substantially as good condition as it was when he received it. This latter condition simply carries over into the field of repudiation of void contracts of sale for motor vehicles "the first and prime essential of rescission" which is said to be "restitutio in integrum" [Black on Rescission and Cancellation, Vol. 2, Section 616, p. 1414] or restoration of the status quo ante,[14] a requirement predicated on the equitable maxim that "he who seeks equity must do equity" [Ebel v. Roller, Mo.App., 21 S.W.2d 214, 216(2, 3); Ballantine v. Ferretti, Sup., 28 N.Y.S.2d 668, 683(8); Felt v. Bell, 205 Ill. 213, 68 N.E. 794, 799] and embodied in the Uniform Sales Act[15] as a condition precedent to rescission by the buyer. 1 U.L.A., Section 69(3), p. 295. That the status quo ante must be restored does not mean that, in all instances, there must be an absolute and literal restoration of the parties to their former situation,[16] and the law is satisfied if a chattel is tendered by the buyer in so substantially the same condition as when sold that neither party will be materially enriched or materially impoverished by its return. Black Motor Co. v. Green, 258 Ky. 72, 79 S.W.2d 409, 411(4). Thus, return of an automobile after "very little" use has been regarded as sufficient compliance with the requirement of restoration of the status quo ante [Whiteley v. Downs, 174 Ga. 839, 164 S.E. 318, 320(5); Gottsman v. Jeffrey-Nichols Co., 268 Mass. 10, 167 N.E. 229, 230(4)], and the fact that a motor vehicle has sustained comparatively minor damage by collision has not been fatal to the buyer's right of repudiation (or rescission) where the damage has been repaired by the buyer before tender. Noel v. Garford Motor Truck Co., 111 Wash. 650, 191 P. 828, 830(2); Standard Motorcar Co. v. McMahon, 203 Ala. 158, 82 So. 188, 191(8). On the other hand, it has been held that where, by reason of the buyer's use of a motor vehicle, there has been such

---

14. Schurtz v. Cushing, 347 Mo. 113, 146 S.W.2d 591, 594(1); Hoback v. Allen, Mo.App., 216 S.W.2d 148, 151(3); Brown v. Presidential Fire & Marine Ins. Co., Mo.App., 24 S.W.2d 206, 207(2); Ungerer & Co. v. Louis Maull Cheese & Fish Co., 155 Mo.App. 95, 134 S.W. 56, 59(4); 12 Am.Jur., Contracts, Section 451, p. 1031; Williston on Sales (Rev. Ed.), Vol. 3, Section 610, p. 350. Exceptions to the rule, none of which are applicable here, are set forth in Restatement of the Law of Contracts, Section 349, p. 595.

15. Now the *statutory* law in thirty-five states (although not in Missouri), the District of Columbia, Alaska, Hawaii and the Canal Zone.

16. Fairbanks, Morse & Co. v. Walker, 76 Kan. 903, 92 P. 1129, 1130–1131(3), 17 L.R.A.,N.S., 558; 46 Am.Jur., Sales, Section 766, p. 898; Black on Rescission and Cancellation, Vol. 2, Section 618, loc. cit. 1426. Consult also Neblett v. Macfarland, 92 U.S. 101, 23 L.Ed. 471; Darelius v. Commonwealth Mortgage Co., 152 Minn. 128, 188 N.W. 208, 211(4); Barron v. Myers, 146 Mich. 510, 109 N.W. 862, 863(3); Campbell Printing Press & Mfg. Co. v. Marsh, 20 Colo. 22, 36 P. 799, 802(3).

unrepaired damage [American Exchange Bank v. Smith, 173 Wash. 441, 23 P.2d 414], "break down" [Denenberg v. Jurad, 300 Mass. 488, 15 N.E.2d 660, 662(5, 6)], or depreciation in value [Summers v. Provo Foundry & Machine Co., 53 Utah 320, 178 P. 916, 918(4–6)], not due to a breach of warranty, that the motor vehicle could not be returned in substantially the same condition as it was when received by the buyer, there could be no repudiation (or rescission) by him.[17]

██ If we did not know judicially in the instant case that, ex necessitate, when the Ford automobile purchased by plaintiff on February 25, 1951, was tendered to defendant on or about September 14, 1953, it was not in substantially as good condition as it was when received by plaintiff more than two and one-half years previously, that fact is established by the testimony of plaintiff, herself, that the Ford, worth $1,180 when purchased, had a reasonable market value of $750 when it was tendered back. It is to us clear and indisputable that, when she undertook in September, 1953, to repudiate the contract of sale for the Ford, plaintiff did not satisfy one of the conditions precedent to such repudiation, i. e., that the Ford be returned or tendered to defendant in substantially as good condition as when plaintiff received it.[18]

*If* this requirement, as it thus has been stated uniformly in all of the cited Missouri cases dealing with motor vehicles,

could have been satisfied other than by literal compliance therewith (a question not raised or briefed by the parties and, on the record presented, reserved by us as unnecessary to determination of this appeal), plaintiff should, on tendering the Ford to defendant in September, 1953, have offered to account for the benefit realized in use of the automobile for more than two and one-half years.[19] However, the transcript before us reflects a firm, arbitrary, unyielding and unremitting demand by plaintiff for $1,004.08 (representing every cent paid by her, in cash or in property, on the sale price of the Ford), boldly presented when the automobile was tendered to defendant on or about September 14, 1953, clearly renewed in plaintiff's petition filed on September 17, 1953, and persistently maintained to April 19, 1955, when the court announced his findings and judgment, in which he noted that "plaintiff demands the full amount paid by her." We have not overlooked the fact that the learned trial judge, recognizing the obvious injustice of plaintiff's demand and with an eye single for the doing of substantial justice, found that "plaintiff should be charged with the use of the Ford car unmolested for a period of over two and one-half years" and opined, albeit in the absence of any evidence on the subject [cf. Kurth v. Morgan, Mo.App., 277 S.W. 50, 55(9); Perry v. Meyer, 110 Neb. 347, 193 N.W. 717, 718], that the value of such use "should at least equal the depreciation." But, the commendable effort of the trial

---

17. See also Donovan v. Aeolian Co., 270 N.Y. 267, 200 N.E. 815, 817–818, 104 A.L.R. 546; Hirsch v. Verschuur, 93 N.J.L. 277, 108 A. 181, 182(2); Ebner v. Haverty Furniture Co., 128 S.C. 151, 122 S.E. 578; Stanley v. Beecham, 214 S.C. 327, 52 S.E.2d 413, 415.

18. See cases cited in footnote 10, supra.

19. Hess v. Ehrlich, 166 Mo.App. 636, 150 S.W. 716, 717(1); Girdner v. Alley, Mo. App., 256 S.W. 832; Roddy v. Stansbury, 45 Ga.App. 705, 165 S.E. 764(2); Hayden v. Collins, 90 Utah 238, 63 P.2d 223, 227(10); Dunn v. Barish, 32 Ohio App.

310, 166 N.E. 912, 913(2); Ford v. Oliphant, Tex.Civ.App., 32 S.W. 437, 438 (3); Gatling v. Newell, 9 Ind. 572, 579; 77 C.J.S., Sales, § 107c(3) (b), p. 814. Consult also Hart v. Littlejohn, Tex.Civ. App., 190 S.W.2d 148, 150; Wright v. Dickinson, 67 Mich. 580, 35 N.W. 164, 168, 170; Black on Rescission and Cancellation, Vol. 2, Section 634, loc. cit. 1463. Compare Hoback v. Allen, supra, 216 S. W.2d loc. cit. 151(3, 4); Drake Hardware Co. v. Wall Bros., 222 Mo.App. 888, 5 S.W.2d 1109, 1110(5); Phoenix Cotton Oil Co. v. Morrow-Stout Wholesale Grocer Co., Mo.App., 236 S.W. 415, 417(4, 5).

court to do equity in his judgment does not supply, for this action at law, the indispensable foundation of adequate restitution made or tendered by plaintiff prior to suit.[20]

Since this essential prerequisite to maintenance of the instant suit has not been shown and obviously could not be established by a retrial, the judgment for plaintiff is set aside and the cause is remanded with directions to enter judgment for defendant.

McDOWELL, P. J., concurs.

RUARK, J., not sitting.

20. See the cases cited in footnotes 5 and 6, supra.